Lael D. Andara (SBN 215416)
Manali Shah (SBN 340870)
**DICKINSON WRIGHT RLLP**
800 W. California Avenue, Suite 110
Sunnyvale, CA 94086
Tel:  (408) 701-6152
Fax:  (408) 701-6143
LAndara@dickinson-wright.com
MShah@dickinson-wright.com

*Attorneys for Plaintiff*
RANGE 2 POKE LLC; R2P ONE LLC; and
R2P TWO LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANGE 2 POKE LLC; R2P ONE LLC; and R2P TWO LLC | CASE NO. 8:22-cv-00949 |
| Plaintiffs, | **COMPLAINT FOR DAMAGES** |
| v. | **[1] FRAUD;** |
| LEMONSHARK FRANCHISING, LLC, a California Limited Liability Company; DEMAND BRANDS GROUP LLC, a California Limited Liability Company;  TOBI MILLER, an individual; RICHARD S. GOTTLIEB, an individual; ALTON KLEIN, an individual; JAMES KRIEGER, an individual; MARIA L. WINN, an individual; and Does 1 through 5 | **[2] NEGLIGENT MISREPRESENTATION;** |
| | **[3] CALIFORNIA FRANCHISE INVESTMENT LAW;** |
| | **[4] RESCISSION;** |
| Defendants. | **[5] BREACH OF WRITTEN AGREEMENT; and** |
| | **[6] UNFAIR COMPETITION.** |
| | DEMAND FOR JURY |

COME NOW PLAINTIFFS, Range 2 Poke LLC, R2P ONE LLC, and R2P TWO LLC,

hereinafter referred to as the singular "R2P" or "Plaintiff," alleges the following causes of action

against Defendants:

1.      Plaintiff seeks recovery of the millions of dollars it has invested, and subsequently lost, in three franchisees located in Columbus, Ohio and surrounding areas as a direct and proximate result of Defendants' fraudulent and otherwise unlawful conduct. Over a period of over three years, Defendants Lemonshark Franchising, LLC., with Demand Brands Group LLC., and their principals and officers engaged in a fraudulent scheme to induce Plaintiff to purchase an Area Development Agreement and three franchises, and to induce Plaintiff to continue to invest large sums of additional capital into the development of the Makai concept that Defendants had never previously sold or fully developed. Not only did Defendants know these representations were false, they failed to disclose that no such concept had been launched at the financial benchmarks Defendants had used in the Franchise Disclosure Documents provided to Plaintiff. As a result of Defendants intentional misrepresentations Plaintiff was induced to enter into a Franchise Agreement and Area Development Agreement which it now seek to have rescinded and full recovery for all losses in excess of $7 million, that Plaintiff has sustained as a direct result of Defendants "fake it till you make it scheme."

## I.      THE PARTIES, JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      Venue is appropriate in this district pursuant to a choice-of-venue provision in the franchise agreement.

4.      Plaintiff Range 2 Poke LLC, R2P ONE LLC, and R2P TWO LLC, ("Plaintiff") are the corporations duly organized and validly existing under the laws of the State of Ohio. Plaintiff Range 2 Poke LLC was the main company operated by Jeff Burghardt and was owned by William Horschel (90%) and Sherry Whay (10%). Subsidiary R2P ONE LLC was created as it relates to the Easton location and R2P TWO LLC was created as it relates to the OSU location.

5.      Plaintiff is informed and believes, and on that basis alleges, that Defendant LemonShark Franchising LLC, hereinafter "LemonShark",  is and at all times relevant was, a

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

corporation duly incorporated and existing under the laws of the State of California and conducting business in Los Angeles County, California.

6.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Demand Brands Group LLC, hereinafter "Demand,"  is and at all times relevant was, a corporation duly incorporated and existing under the laws of the State of California and conducting business in Los Angeles County, California.

7.      Plaintiff is informed and believes, and on that basis alleges, that Defendants Demand and LemonShark was in the business of selling franchise Poké restaurant locations throughout the U.S. as evidenced from the materials provided to Plaintiff in 2019:

 

8.      Plaintiff is informed and believes, and on that basis alleges, that Defendant Lemonshark Poké opened an eatery in Southern California in 2016 and a year later began a franchise program.

9.      Plaintiff is informed and believes, and on that basis alleges, that Defendant TOBIAS G. MILLER ("Miller") is, and at all times relevant was, a resident of the State of California, and a representative LemonShark and Demand, the president of LemonShark and Demand, and the real president of LemonShark.

10.     Plaintiff is informed and believes, and on that basis alleges, that Defendant RICHARD GOTTLIEB ("Gottlieb") is, and at all times relevant was, a resident of the State of California, and a representative LemonShark and Demand, the Chief Executive Officer of LemonShark and Demand.

11.     Plaintiff is informed and believes, and on that basis alleges, that Defendant JAMES KRIEGER ("Krieger") is, and at all times relevant was, a resident of the State of California, and a representative LemonShark and Demand, the Chief Operating Officer of LemonShark and Demand.

12.     Plaintiff is informed and believes, and on that basis alleges, that Defendant MARIA L. WINN ("Winn") is, and at all times relevant was, a resident of the State of California, and a representative LemonShark and Demand, the Director of Franchise Sales of LemonShark and Demand.

13.     Plaintiff is informed and believes, and on that basis alleges, that Defendant Alton ("Winn") is, and at all times relevant was, a resident of the State of California, and a representative Demand, the Vice President of Design and Construction for Demand Brands Group LLC.

14.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this Complaint, all representations made by Defendants in the course of dealing between the parties were made by employees or agents of Defendant LemonShark and Demand, and in doing the things alleged in this complaint were acting within the course and scope of that agency and employment.

15.     The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as Does 1 through 5 inclusive, are unknown to Plaintiff, who therefore sue said Defendants by said fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as a fictitiously named defendant is in some manner responsible for the events and happenings referred to, either contractually or tortiously. When Plaintiff ascertains the true names and capacities of Does 1 through 5, they will amend their complaint accordingly.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

16.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that LemonShark and Demand are in the business of owning and operating a comprehensive and uniform restaurant system of LemonShark Poké restaurants and selling franchises to franchisees for the operation of LemonShark Poké restaurants (described by Defendants as "*Food Court LemonShark Restaurant- 400 to 1,650 square feet*"), and later claimed to have knowledge as to the LemonShark Makai restaurants (described by Defendants as "*Turnkey LemonShark Restaurant- 1,250- 2,250 square feet*").

17.     Defendants repeatedly covered up the true state of the franchise system, including the many closures and struggles of other franchises in the system.

18.     The misrepresentations and continued omissions after Plaintiff entered into a Franchise Agreement and Area Development Agreement in February of 2020, violated California Franchise Investment Law, Federal Disclosure requirements, and constituted Fraud in the Inducement and negligent misrepresentation and provide for personal liability for the individual defendants herein named.

19.     Plaintiff was unable to discover the fraudulent misrepresentations of Defendants until such time as they consulted with counsel in October 2021.

20.     Plaintiff attempted to address the issues experienced related to high expenses and low profits with the Franchisor on multiple occasions as set forth herein.  The Franchisor and its officers continually responded that Franchisee should focus on resolving staffing issue and further invest in the Makai concept, in an effort to direct Franchisee's attention away from the Franchisor's misrepresentations.

21.     For violations of the above statutes and other claims, Plaintiff seeks to recover the substantial damages it has sustained as a direct result of Defendants intentional fraud and related claims and any other relief as allowed by law that is supported by the evidence set forth in this Complaint and anticipated to be entered at trial.

22.     Defendant Miller and Winn repeatedly overstated the number of franchisees in the system, as recently as April 2022 making it impossible for Plaintiff or any future franchisee to discover the viability of the concept.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

23.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that it has sustained damages in excess of $7 Million dollars, which includes, but is not limited to, $1.5 million in the Easton location, and $1.3 million invested in the OSU location and the related lease obligations all of which is expected to exceed over $7 million dollars.

## II.     FACTS COMMON TO ALL CLAIMS FOR RELIEF

24.     Plaintiff learned of Defendants operations based on research and advertising such as the Franchise Presentation it provided to the public, a few of those marketing slides are set forth herein to describe the nature and scope of the Defendants operations:



25.     On or about **August 1, 2019**, at 2:15 PM, Defendant Winn sent an email to Sherry Whay stating:

| | |
|---|---|
| **From:** | mwinn=lemonsharkpoke.com@emaxmta.com on behalf of mwinn@lemonsharkpoke.com |
| **Sent:** | Thursday, August 1, 2019 2:15 PM |
| **To:** | Sherry Whay |
| **Subject:** | Aloha from LemonShark Poke! |

Hi Sherry,

Thank you for your interest in franchising with LemonShark Poké. LemonShark Poké is a fine casual dining experience like no other in our category. From our tropical modernist store interiors to the interactive self serve beer wall, LemonShark Poké is a unique dining experience sure to satisfy any palate.
We are well organized and staffed for growth!
Our team brings a wealth of knowledge with combined experience of over 60 years in the restaurant industry.
Please respond to this email to set up a call to learn more about what it means to be a LemonShark Poké franchisee and our process.
You can also take the next step and  Click here  to complete our confidential evaluation form.  Once you submit a qualified form we will contact you to discuss what your next step is in the process will be.

Please go to our website to learn more about us https://lemonsharkpoke.com/franchise2/

Best,

**MARIA WINN**

Director of Franchise Sales & Communications
439 N Bedford Drive,
Beverly Hills, CA 90210
Cell: 714-905-4016

26.     On or about **August 2, 2019**, at 2:45 PM,  Defendant Winn made certain a material representation as to food sourcing by email:

> **From:** Maria Winn [mailto:mwinn@lemonsharkpoke.com]
> **Sent:** Friday, August 2, 2019 2:45 PM
> **To:** Sherry Whay <sherry@fairwhaymgmt.com>
> **Subject:** Re: Quick Question
>
> Yes it is. Would also love to put you in contact with our COO. He can really speak about distribution but you're deliveries are dependent on your volume, storage size. I'd be happy to set up time with him as well. Maria
>
> On Fri, Aug 2, 2019 at 11:38 AM Sherry Whay <sherry@fairwhaymgmt.com> wrote:
>
>> Maria,
>>
>> Failed to ask; is your seafood sustainable?  How do you and how often do you transport it to the stores?
>>
>> Thanks,
>>
>> Sherry

27.     On **August 3, 2019**, LemonShark Franchising LLC., ("LemonShark") provided Plaintiff with a Franchise Disclosure Document ("FDD") dated **April 22, 2019** having June 18, 2019 as its name for the document, which was the only Franchise Disclosure Document provided by Defendants to Plaintiff. (Attached hereto as **Exhibit 1 -** R2P0000001- R2P0000263)

> **From:**          Maria Winn
> **Sent:**          Saturday, August 3, 2019 1:55 PM
> **To:**            Sherry Whay
> **Subject:**       LemonShark Poke
> **Attachments:**   6-18-19 Lemonshark - FDD FULL (FTC-CT-FL-GA-IL-TX-UT).pdf
>
> Sherry,
>
> Please find the FDD attached. I also spoke to our COO and he is open to a call.  His name is Jim Krieger.  Let me know your availability and I will set it up.
> Please feel free to reach out to me should any questions come up, text, call or email. Enjoy the rest of your weekend!
>
> **MARIA WINN**
> Director of Franchise Sales & Communications
>
> --
> Maria Winn
> Director of Franchise Sales & Communications
> LemonShark Poke
> 729 Montana
> Santa Monica Ca 90403
> 714-905-4016

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

28. On **December 10, 2019**, Defendant Winn provided Plaintiff with a Franchise Disclosure Document ("FDD") dated **April 22, 2019** as amended October 30, 2019 which was entitled "11-5-19 FDD FULL," which was substantially the same as the Franchise Disclosure Document referenced in paragraph 14. (Attached as **Exhibit 2** - R2P0000264- R2P0000529)

| From: | Maria Winn |
|---|---|
| Sent: | Tuesday, December 10, 2019 4:33 PM |
| To: | Jeff Burghardt |
| Cc: | Tobi Miller |
| Subject: | Re: FW: NYTimes.com: PAID POST by JFOODO — A Night of Sake, Seafood and Surprise |
| Attachments: | 11-5-19 FDD FULL (FTC-CT-FL-GA-IL-TX-UT).pdf |

Thank you Jeff. Attached is the FDD that includes the Makai buildout.  Once Tobi has the other Makai pieces he will forward those over as well.

**MARIA WINN**
Director of Franchise Sales & Communications

29. On or about **August 2, 2019**, at 2:45 PM,  Defendant Winn made certain material representations as to the Makai concept by email:

From: Maria Winn
Sent: Monday, December 16, 2019 8:16 AM
To: jburghardt@jburghardt.com
Subject: Re: FW: NYTimes.com: PAID POST by JFOODO — A Night of Sake, Seafood and Surprise

My guess is March. We have a new franchisee (the small store example) in San Diego are doing Makai. We really haven't presented it much.

On Mon, Dec 16, 2019 at 8:12 AM <jburghardt@jburghardt.com> wrote:

When would that mean the store re-opens? Is there any other location by a franchisee that is going to do Makai?

From: Maria Winn <mwinn@lemonsharkpoke.com>
Sent: Monday, December 16, 2019 11:07 AM
To: jburghardt@jburghardt.com
Subject: Re: FW: NYTimes.com: PAID POST by JFOODO — A Night of Sake, Seafood and Surprise

We are hopeful for 6-8 weeks but we are likely looking at 10 weeks.

On Mon, Dec 16, 2019 at 8:03 AM <jburghardt@jburghardt.com> wrote:

Sorry Maria, one more question, when do you anticipate your corporate store re-opening with the Makai changes?

Jeff

From: Maria Winn <mwinn@lemonsharkpoke.com>
Sent: Monday, December 16, 2019 10:58 AM
To: jburghardt@jburghardt.com
Subject: Re: FW: NYTimes.com: PAID POST by JFOODO — A Night of Sake, Seafood and Surprise

Good Monday Jeff. The is actually the only changes related to Makai as it's an option to the LemonShark brand.  What I sent prior to our call is actually the details we have so far. I believe Tobi will have a rendering shortly and he will send that over once it is received. Maria

On Mon, Dec 16, 2019 at 7:51 AM <jburghardt@jburghardt.com> wrote:

Good morning Maria – I have looked at the first 55 -60 pages and not the specific agreements of the new FDD – I did not see any detailed info on Makai. Just references and some modified pricing in the build out numbers. Is there anything else I should be looking at as it relates to Makai?

Thank you

Jeff

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

30.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that the similarity of the allegations against Defendants by a California Franchisee in Case No. 20STCV00693, require future disclosure Demand and Lemonshark to protect the public as those same unfair and fraudulent business practices of Defendants are also alleged to have occurred in this action:

11.     After Cross-Complainants began operating their LemonShark restaurant, they were not provided promised support by Cross-Defendant LemonShark, including for marketing, supply chain, and quality and cost of products. Instead, for example, the fish suppliers designated by Cross-Defendant LemonShark offered poor quality seafood at higher prices, and marketing and other support was not provided by Cross-Defendant LemonShark. In response to Cross-Complainants request for support, Cross Defendants promised to rectify the problems.

13.     The promised assistance and changes from Cross-Defendant LemonShark never materialized, and Cross-Complainants' LemonShark restaurant in Temecula remained unprofitable. Cross-Complainants later learned that many other LemonShark franchisees were made the same misrepresentations and suffered from the lack of a viable system and support, and were also unprofitable. Many of these other LemonShark franchisees have shut down or are close to doing so.

22.     During the initial meeting at the corporate store on March 29, 2019, Cross-Defendant Miller took Cross-Complainants Milasinovic and Rakic into a back office to meet Kalibou Ba ("Ba"), the Redlands' corporate Store Manager. Ba then reviewed financial information with monthly expenditures and profit of the Redlands store with Cross-Complainants Milasinovic and Rakic. Ba stated that food costs never exceeded 35% of revenues, rent and utilities were 12% of revenues, that franchise fees and advertising were 8% of revenues and labor costs were 20% of revenue. Ba expressly confirmed that these costs were 75% of revenues, leaving 25% as profit. At the meeting, Miller corroborated these numbers to Cross-Complainants Milasinovic and Rakic. Miller further stated that LemonShark franchisees should expect to make at least 18% to 22% net profit on revenues.

31.     Thereafter, Cross-Defendant LemonShark provided little to no guidance on the buildout and design of the LemonShark restaurant which Cross-Complainants completed largely on their own.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

31.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that the San Diego franchise referenced above is the same that brought claims of: 1. Fraud and Deceit; 2. Negligent Misrepresentation; 3. Breach of the California Franchise Investment Law; 4. Breach of Written Area Development Agreement Contract; 5. Breach of Oral Franchise Agreement Contract; 6. Rescission of Contracts; and 7. Breach of the California Unfair Competition Law, in an action filed on **January 7, 2020**, but glaringly absent from any Franchise Disclosure Documents, even though initiated by Defendant Lemonshark a month before Plaintiff entered into a franchise agreement with Defendant Lemonshark on **February 3, 2020**. See Case No. 20STCV00693, Stanley Mosk Courthouse, Sup. Ct. L.A.

32.     Defendants solicited Plaintiff with the offer of the sale of a franchise arrangement for several LemonShark restaurants from August 2019 to February 2020, with incomplete and understated Franchise disclosure documents that stated that the total investment necessary to begin operations of one LemonShark Makai Restaurant ranges from $341,950 to $866,400, or **$372,450 to $898,900** to begin operations under an Area Development Agreement to develop two Makai LemonShark Restaurants and one LemonShark Poké Restaurant, in that order. See **Exhibit 1** at Page 22 and **Exhibit 2** at Page 19.

| Type Of Expenditure | Amount | | Method Of Payment | When Due | To Whom Payment Is To Be Made |
|---|---|---|---|---|---|
| | Low | High | | | |
| **INITIAL INVESTMENT FOR 2 TURNKEY LEMONSHARK RESTAURANTS AND 1 FOOD COURT/KIOSK LEMONSHARK RESTAURANT** | | | | | |
| Initial Investment [15] | **$341,950** | **$866,400** | See Above | See Above | See Above |
| Development Fees [111] | $27,500 | $27,500 | Cash | At Signing | Us |
| Additional Legal Fees [9] | $3,000 | $5,000 | Cash | As Incurred | Legal & State |
| **GRAND TOTAL** [13] | **$372,450** | **$898,900** | | | |

33.     The financial investment figures provided by Defendants were detrimentally relied upon by Plaintiff in obtaining funding and related personal guarantees for the Franchise Agreement and related leases for Easton and OSU, and had Defendants properly disclosed that the actual cost known to them was approximately 70% greater (approximately $2 million dollars

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

more than disclosed by Defendants) than Defendants disclosed, Plaintiff would not have proceeded with the agreement. See **Exhibit 3 –** R2P0000530-R2P0000794.

| Type Of Expenditure | Amount | | Method Of Payment | When Due | To Whom Payment Is To Be Made |
|---|---|---|---|---|---|
| | Low | High | | | |
| INITIAL INVESTMENT FOR 2 TURNKEY MAKAI BY LEMONSHARK RESTAURANTS AND 1 FOOD COURT/KIOSK LEMONSHARK RESTAURANT | | | | | |
| Initial Investment [16] | $1,441,250 | $2,838,944 | See Above | See Above | See Above |
| Development Fees [13] | $27,500 | $27,500 | Cash | At Signing | Us |
| Additional Legal Fees [11] | $3,000 | $15,000 | Cash | As Incurred | Legal & State |
| GRAND TOTAL [15] | $1,471,750 | $2,881,444 | | | |

34.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that on or about **May 14, 2020**, Defendants filed a franchise renewal applications that included material information never disclosed to Plaintiff by Defendants:

| Type Of Expenditure | Amount | | Method Of Payment | When Due | To Whom Payment Is To Be Made |
|---|---|---|---|---|---|
| | Low | High | | | |
| INITIAL INVESTMENT FOR 2 TURNKEY MAKAI BY LEMONSHARK RESTAURANTS AND 1 FOOD COURT/KIOSK LEMONSHARK RESTAURANT | | | | | |
| Initial Investment [16] | $341,950 1,441,250 | $866,400 2,838,944 | See Above | See Above | See Above |
| Development Fees [11] [13] | $27,500 | $27,500 | Cash | At Signing | Us |
| Additional Legal Fees [9] [11] | $3,000 | $5 15,000 | Cash | As Incurred | Legal & State |
| GRAND TOTAL [11] [15] | $372,450 471,750 | $898,900 2,881,444 | | | |

35.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendants Lemonshark and Demand, Miller, and Winn were all fully aware prior to **February 3, 2020**, that the Franchise Disclosure agreements provided to Plaintiff with estimates as to investment expenditures set forth in the April 22, 2019, and the later amended in October 30, 2019 were significantly lower than what a Franchisee would reasonably anticipate to invest.

36.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendants failure to disclose the actual and reasonably anticipated capital costs for building out a franchise location was in violation of California Franchise disclosure laws and Federal law CFR §436.5, and such omission from December 2019 until January 2022 was intentional and ongoing.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

37.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendants had an obligation to disclose in the Franchise disclosure document and pending civil actions involving allegations of fraud or deception, and assert that such allegation by Defendant Gottlieb's own sister were required to be disclosed as that action was pending since **December 7, 2019**.

38.     Defendant Winn first disclosed the Makai Concept in writing on **December 6, 2019**, as illustrated by the following email:

| | |
|---|---|
| **From:** | Maria Winn |
| **Sent:** | Friday, December 6, 2019 3:56 PM |
| **To:** | Jeff Burghardt |
| **Subject:** | Fwd: Makai Concept |
| **Attachments:** | Makai by LemonShark Poke_Concept.MW.pdf |

Jeff,

Good to speak to you today.  Please find the Makai by LemonShark Information attached.  I will send a calendar notice out for Tuesday 10am pst.  so we can discuss the option further with Tobi.  Have a great weekend!

**MARIA WINN**
Director of Franchise Sales & Communications

39.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendant Gottlieb **_is alleged_** to have abused his power by breaching duties he owes to the Trust, the Trust's beneficiaries (including his sister), and has misappropriated his father's personal assets for his own benefit including, but not limited to, using trust assets as alleged:

41.     For example, upon information and belief, Richard used Mr. Gottlieb's personal assets and/or Trust money in 2016 to start a Hawaiian food restaurant, LemonShark Poké ("LemonShark"), and in 2017 to develop it into a franchise business.  Plaintiffs are informed and believe, and thereon allege, that the business has never been profitable.  Yet, Plaintiffs are informed and believe, and thereon allege, that Richard continued pouring Trust money into opening additional franchise locations in 2020 during the COVID-19 pandemic when most restaurants were forced to shut down.

See Case No. 20STCV46738, Spring Street Courthouse, Sup. Ct. L.A.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

40.     On **August 20, 2019**, Defendant Krieger made certain material misrepresentations to Plaintiff representatives Jeff Berghardt and Sherry Whay, as memorialized in Ms. Whay's contemporaneously made hand written notes:



41.     On or about **August 22, 2019**, Plaintiff provided Defendants LemonShark and Demand an executed Non-Disclosure agreement to continue Franchise negotiations.

42.     On or about **August 26, 2019**, Plaintiff representative Sherry Whay had a conversation with Michael Keller, then owner of the Wheaton, Illinois (western Chicago suburb) franchise location, which was set up and directed by Defendants Winn and Krieger.

43.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that LemonShark's Franchise location at 135 Danada Square in Wheaton Illinois is depicted in the following images:





44.     On or about **August 26, 2019,** Defendants represented to Plaintiff and other Franchisees, such as Michael Kessler, that Orlando, NOLA, and Redlands franchise locations were already profitable.

45.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendants intentionally used franchisee owners to reinforce the misrepresentations.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

46.     On or about **August 28, 2019**, Plaintiff was in the process of obtaining a suitable

franchise location when it received the following communication from Defendant Winn:

| | |
|---|---|
| **From:** | Maria Winn |
| **Sent:** | Wednesday, August 28, 2019 10:19 AM |
| **To:** | Jeff Burghardt |
| **Cc:** | Jim Kriegs; Sherry Whay |
| **Subject:** | Re: Real Estate/Location Metrics |

Hello Jeff,

For size we are looking at 12-1,500 sq ft.  but we've done smaller and larger formats, it all depends on rents and the market. This is really Tobi's lane, I am asking him to call you.

**MARIA WINN**
Director of Franchise Sales & Communications

On Tue, Aug 27, 2019 at 5:50 AM Jeff Burghardt <jburghardt@jburghardt.com> wrote:

Good Morning Maria and Jim.


When we had our initial phone call with Tobi he mentioned that you folks have some defining real estate characteristics for the actual proposed restaurant location. I took this to understand that this initial information would help us in our location search work. We have a couple of locations in mind and are preparing to meet with our local broker to refine our efforts.  Once we have more certainty on an actual location then LemonShark would become more directly involved.

May we please receive this information so that we may advance our location search activities.

Thank you

Jeff

47.     On or about **August 29, 2019**, Plaintiff was contacted by Defendant Miller, who

made certain representations about the potential franchise locations operated by Defendant

LemonShark and Demand, and provided the following attachment by email:



RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

48.      Plaintiff is informed and believes, and on the basis of that information and belief alleges, that LemonShark's Franchise location at 10601 Washington Blvd Suite 102 in Culver City, California is depicted in the following images, as referenced in paragraph 35 above:



49.      On or about **September 3, 2019**, Plaintiff was in the process of evaluating the financial feasibility of the potential franchise when Defendant Winn provided a response to Plaintiff's request:



From:        Maria Winn
Sent:        Tuesday, September 3, 2019 11:33 AM
To:          Jeff Burghardt
Cc:          Jim Kriegs; Tobi Miller; Sherry Whay
Subject:     Re: Pro Formas for LemonShark Restaurant.
Attachments: LemonShark Poke @ XXXX.xlsx

Hello Jeff,

Thank you for the update let me know when we can set up a call to go over your FDD questions.
See the attached form with formulas.   The assumptions should be data that you've collected from your conversation with franchiees, as I said on our call we are legally bound and unable to provide those types of financial assumptions.
**MARIA WINN**
Director of Franchise Sales & Communications

On Tue, Sep 3, 2019 at 10:02 AM Jeff Burghardt <jburghardt@jburghardt.com> wrote:

Good afternoon Maria, Jim and Tobi – Morning still I guess in Cali.

I am currently reviewing the FDD – It will take a bit of time to get through it. I am enjoying the information that you are presenting there. I will save my comments/questions until I have completed the review.

Jim – when we spoke on the phone you mentioned that we would be able to receive pro-formas of financial performance/projections. I would like to get on with that exercise. Not sure how LemonShark has that formatted and, of course, the set of assumptions used to drive the revenue and expense figures will be key to my understanding.

Thank you

Jeff

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

50.     From on or about **September 7, 2019**, to **December 6, 2019**, Plaintiff was actively analyzing market competition, potential locations, and business plan development with Defendants, during which time Defendants Winn, Miller, and Krieger emailed Plaintiff on a weekly basis to encourage Plaintiff to enter into the proposed franchise agreement.

51.     On or about **October 11, 2019**, Plaintiff's representative Jeff Burghardt toured the franchise location in Orlando Florida, but was unable to meet with the franchise owner as Defendants were aware as memorialized by the email of Defendant Winn on **October 14, 2019**:

| | |
|---|---|
| From: | Maria Winn |
| Sent: | Monday, October 14, 2019 6:28 AM |
| To: | Jeff Burghardt |
| Cc: | Jim Krieger; Tobi Miller; Sherry Whay |
| Subject: | Re: Visit to Florida |

Hi Jeff,

We just wanted to follow up and see how your visit in Orlando went.  I hope you were able to connect with Bruce and Diana.  Let us know how it went and if there is anything else we can do to help.

MARIA WINN
Director of Franchise Sales & Communications

LemonShark Poke
729 Montana
Santa Monica Ca 90403
Cell: 714-905-4016

52.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that LemonShark's Franchise location at 3801 Avalon Park East Blvd. 175 in Orlando, Florida is depicted in the following images:



RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

53.     On or about **October 15, 2019** an initial business plan was distributed within Plaintiff's company based on the financial information and material representations made by Defendants as to initial investment costs and their encouragement to consider the Orlando, Culver City, and Wheaton locations, which Defendants, and each of them, confirmed required an estimated investment cost of $450K to $500K.

54.     On **November 4, 2019**, Plaintiff sent several questions to Defendant Miller pertaining to LemonShark's financials, to which Mr. Miller responded:

> *Some of it will need to go to our accountants.  But before that even, I need to run it by our attorney to make sure we're not running afoul of franchise law.  We're somewhat bound by the information in our FDD **which has been audited and approved by California**.  So I just need them to clarify for us what is OK to disclose beyond the FDD.  I don't think there will be issues but I'll forward to them now and let you know.*

55.     On **November 6, 2019**, Defendant Miller sent a further response that stated Defendants could not answer Question 5, because, "the next financial statement they can see will be your 2019 audited financial statements that will be in your 2020 FDD."

56.     In Defendant Miller's email of **November 6, 2019** at 8:24 PM, he stated:

> *We didn't sell our first franchise until about April.  Many of the sales occurred later in 2017 and actually a lot in December. The reason for that is that we began negotiations with the JAE Group and decided that after December, we'd temporarily stop selling franchises.  So a lot of the prospective franchisees checking us out bought in December before the door closed (a few did spill over into the new year).*

> *Our attorney recommended that we provide the stores that opened in 2018 and the dates. Royalties are set at 3% for the first 6 months and then they adjust to 6%.  Vista was the first franchisee to sign on with us (though not the first to open a store) so they got a deal of 3% for one full year.*

| | | |
|---|---|---|
| *Vista, CA* | *Opened* | *5/20/2018* |
| *New Orleans, LA* | *Opened* | *7/16/2018* |
| *Chico, CA* | *Opened* | *9/2/2018* |
| *Visalia, CA* | *Opened* | *10/11/2018* |
| *Plainview, NY* | *Opened* | *10/24/2018* |
| *Yucaipa, CA* | *Opened* | *10/25/2018* |

57.     In Defendant Winn's email of **November 7, 2019** at 10:20 AM, she stated:

> *Thank you so much for your inquiry, we are on the move the last two years, since we first started franchising in 2017, we have now awarded **over 90+ franchises in 6 states**.  We have **20 restaurants open for business**, with 1-2 opening every month in 2019.  Poke is "HOT", and here to stay !*

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

58.     In Defendant Miller's email of **November 8, 2019** at 9:25 PM, he stated:

*I think a large part of that is due to the Vista CA store.  This was the first of the new "Prototype" store design done by the Shake Shack team in NY.   Richard and I put in about $180,000+ into that store to get it right.  We had the design team fly out from NY and there were quite a few changes as the store was being built.   We bore the cost of changes which was only fair because they were the first to build this new design.*

59.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that LemonShark's Franchise Disclosure document underestimated, by as much as 50%, the initial investment costs for the above-described restaurant concept as seen at the Vista California location that was constructed in 2018.

60.     On **November 14, 2019**, Plaintiff and Defendants participated in a conference call to discuss franchise agreement status and the marketing capability of William Horschel as to the LemonShark brand, including a 16 page presentation emailed at 5:46 PM, as herein depicted:



61.     On **December 6, 2019**, Defendant Winn sent Plaintiff a document entitled "Makai by LemonShark Poke_Concept."

| | |
|---|---|
| **From:** | Maria Winn |
| **Sent:** | Friday, December 6, 2019 3:56 PM |
| **To:** | Jeff Burghardt |
| **Subject:** | Fwd: Makai Concept |
| **Attachments:** | Makai by LemonShark Poke_Concept.MW.pdf |

Jeff,

Good to speak to you today.  Please find the Makai by LemonShark Information attached.   I will send a calendar notice out for Tuesday 10am pst. so we can discuss the option further with Tobi.  Have a great weekend!

**MARIA WINN**
Director of Franchise Sales & Communications

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

62.     Therein the attached PDF to the **December 6, 2019** email stated:

MAKAI by LemonShark Poke adds the addition of yakitori grills to the typical LemonShark Poke restaurant. MAKAI brings the concept of LemonShark into the "Experiential Dining" category thereby increasing traffic flows during the coveted evening and weekend dayparts. We anticipate a much higher volume of sales to come from our alcohol beverage offerings. Whereas the poke offerings are strongest at lunch, the grilled options will drive dinner traffic creating essentially two stores in one maximizing the lunch and dinner dayparts and overall store performance.

The inventive interior design maintains the poke offerings as a focal point of the LemonShark brand which are showcased in a high profile "fish market" style display case facing the entrance to the store. The display style is the traditional way that poke is presented and sold in Hawaii. Poke is offered with the same current counter-point service and to go options.





The yakitori grills meanwhile are placed in front of customers so that they can enjoy the grilling process themselves a la Korean BBQ style. The grills are sunk into the counter top bar for an intimate dining experience. The MAKAI grills utilize a special "downdraft" grill system that eliminates expensive hood systems and a smoke-filled room.

The attached PDF depicted a restaurant with 2,000 to 3,500 square feet:



RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

63.     Plaintiff is informed and believes, and on the basis of that information and belief

alleges, that as of **December 6, 2019** none of the Defendants had any trademark right to "Makai,"

or "Makai Grill," which are both in use since 2016 for island style food prior to Defendants

claimed concept, by several years. https://www.makaigrillfranchise.com/

64.     On **December 11, 2019**, Defendant Winn sent Plaintiff an email that included the

Makai buildout.

| | |
|---|---|
| From: | Maria Winn |
| Sent: | Tuesday, December 10, 2019 4:33 PM |
| To: | Jeff Burghardt |
| Cc: | Tobi Miller |
| Subject: | Re: FW: NYTimes.com: PAID POST by JFOODO — A Night of Sake, Seafood and Surprise |
| Attachments: | 11-5-19 FDD FULL (FTC-CT-FL-GA-IL-TX-UT).pdf |

Thank you Jeff.  Attached is the FDD that includes the Makai buildout.   Once Tobi has the other Makai pieces
he will forward those over as well.

**MARIA WINN**
Director of Franchise Sales & Communications

65.     The attached PDF was entitled "11-5-19 FDD FULL" that stated "THE

ISSUANCE DATE OF THIS DISCLOSURE DOCUMENT IS APRIL 22, 2019, AS AMENDED

OCTOBER 30, 2019," (Exhibit 2 - see paragraph 21) which reiterated the material

misrepresentations previously made in part as shown at Page 19 of the FDD:

| Type Of Expenditure | Amount | | Method Of Payment | When Due | To Whom Payment Is To Be Made |
|---|---|---|---|---|---|
| | Low | High | | | |
| **INITIAL INVESTMENT FOR 2 TURNKEY LEMONSHARK RESTAURANTS AND 1 FOOD COURT/KIOSK LEMONSHARK RESTAURANT** | | | | | |
| Initial Investment [15] | **$341,950** | **$866,400** | See Above | See Above | See Above |
| Development Fees [111] | $27,500 | $27,500 | Cash | At Signing | Us |
| Additional Legal Fees [9] | $3,000 | $5,000 | Cash | As Incurred | Legal & State |
| **GRAND TOTAL [13]** | **$372,450** | **$898,900** | | | |

66.     On or about **December 13, 2019**, Defendants informed Jeff Burghardt that they

were evolving their concept to a Makai model to include a cooked bar area in an effort to increase

evening traffic and average ticket size, which, as referenced in

paragraph 50, would require a larger square footage, though

Defendant Miller described this as an optional feature that would

not affect capital contribution.



RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

67.     On or about **December 13, 2019**, Defendant Miller informed Jeff Burghardt that Defendant LemonShark was remodeling its Redland store from a LemonShark Poké restaurant to their new LemonShark Makai restaurant concept, presenting Miller's claim that the Redland store, while generating revenue of over a million dollars a year, once renovated in 3 weeks would double its revenue.

68.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that the location at 360 Orange Street, Redlands, California was operated at Aloha Poke Bowl from **October 15, 2016** until **June 13, 2017** when the location was operated as Lemonshark poke, and then at some later date its present Makai, as depicted in the following images:



RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

69.     On **December 16, 2019**, Jeff Burghardt asked Defendant Winn, "I did not see any detailed info on Makai, just references and some modified pricing in the build out numbers. Is there anything else I should be looking at as it relates to Makai?," to which Defendant Winn replied by email at 3:58 PM, "The is actually the only changes related to Makai as it's an option to the LemonShark brand."

> **From:** Maria Winn <mwinn@lemonsharkpoke.com>
> **Sent:** Monday, December 16, 2019 10:58 AM
> **To:** jburghardt@jburghardt.com
> **Subject:** Re: FW: NYTimes.com: PAID POST by JFOODO — A Night of Sake, Seafood and Surprise
>
>
> Good Monday Jeff. The is actually the only changes related to Makai as it's an option to the LemonShark brand.  What I sent prior to our call is actually the details we have so far. I believe Tobi will have a rendering shortly and he will send that over once it is received. Maria
>
> On Mon, Dec 16, 2019 at 7:51 AM <jburghardt@jburghardt.com> wrote:
>
>> Good morning Maria – I have looked at the first 55 -60 pages and not the specific agreements of the new FDD – I did not see any detailed info on Makai. Just references and some modified pricing in the build out numbers. Is there anything else I should be looking at as it relates to Makai?
>>
>> Thank you
>>
>> Jeff

70.     On **December 16, 2019**, Defendant Winn indicated that Defendants hoped that their Redlands restaurant would reopen as a Makai restaurant in 6-8 weeks, but anticipated it was more likely to be around ten weeks and confirmed that Defendant LemonShark had a new franchisee in San Diego currently operating under the Makai concept.

71.     On **December 20, 2019**, Plaintiff provided Defendants with proposed franchise documents and addendum, which Defendant Winn returned with redline on **December 23, 2019** at 6:04 PM by email to Plaintiff.

> **From:**           Maria Winn
> **Sent:**           Monday, December 23, 2019 6:04 PM
> **To:**             Jeff Burghardt; Sherry Whay
> **Cc:**             Tobi Miller
> **Subject:**        Fwd: Docs for review_Ohio Group
> **Attachments:**    TM_Exhibit C - Modified LemonShark.DOCX; TM_2-Exhibit D Area Development Agreement.DOCX; TM_2-Addendum to Area Development Agreement.DOCX; TM_2-Exhibit E to Area Development Agreement.DOCX; TM_Addendum to Lemonshark Franchise Agreement.DOCX
>
> Good Evening Jeff and Sherry,
>
> We have reviewed the documents you sent over Friday, thank you.  Please find the documents with tracked changes attached.  We would be happy to jump on a call if needed.  We will be in the office on Thursday.
>
> **MARIA WINN**
> Director of Franchise Sales & Communications

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

72.     On or about **January 7, 2020**, Plaintiff officially joined the Ohio Restaurant Association in anticipation of finalizing their franchise agreement with Defendants.

73.     On **January 13, 2020**, Defendant Miller sent over revisions to the document entitled, "TM_Addendum to Lemonshark Franchise Agreement."

| | |
|---|---|
| **From:** | Tobi Miller |
| **Sent:** | Monday, January 13, 2020 9:07 AM |
| **To:** | Jeff Burghardt |
| **Cc:** | Maria Winn |
| **Subject:** | Re: Revised Agreements/Addendums round 3 |
| **Attachments:** | TM_Addendum to Lemonshark Franchise Agreement_1-13-20.DOCX.DOCX |

Hi  Jeff - I appreciate the "conservation of legalese" by your attorneys!!   I only made changes to the definition on the Addendum attached here.

74.     As of **January 16, 2020**, Plaintiff's expenses relating to the LemonShark Franchise were over $137,500.

75.     On or about **January 22, 2020**, Defendant Miller traveled to Columbus Ohio to evaluate potential sites for Plaintiff's anticipated franchise locations.

76.     A Franchise Agreement was entered into between Plaintiff and Defendant LemonShark on **February 3, 2020**, hereinafter the "Franchise Agreement." (Attached hereto as **Exhibit 4** – R2P0000795-R2P0000899.)

> 15.     **COVENANTS.**
>
> 15.1     **No Prior Experience, Information or Knowledge.** Franchisee specifically acknowledges and agrees that prior to becoming a franchisee of Franchisor, Franchisee had no experience, information or knowledge whatsoever about a poke restaurant or a LemonShark Restaurant and that Franchisee's knowledge of the LemonShark Confidential Information was obtained solely from Franchisor, following Franchisee's training by Franchisor and Franchisee's subsequent operation of the Franchised Restaurant under this Agreement.

77.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendants intentionally made material misrepresentations regarding their experience and ability to estimate and build out a LemonShark Makai restaurant, and that they understood at the time of making those statements that Plaintiff and its investor would rely upon the aforementioned in making their investment decision, and that Defendants intended that Plaintiff proceed with the investment to allow Defendants to use Plaintiff's capital to develop the concept to an actual working Makai model at Plaintiff's cost and expense, whereby Defendants were unjustly enriched by avoiding the development costs for an actual Makai build out.

78.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendants have previously made misrepresentations to franchisees as to the number of actual profitable restaurants and the Defendants knowledge and experience in building out a restaurant. See paragraphs 23 and 49.

79.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendant Miller intentionally made material misrepresentations regarding his experience and ability to estimate and build out a LemonShark Makai restaurant, and that he understood at the time of making those statements that Plaintiff and its investor would rely upon the aforementioned in making their investment decision. See paragraphs 23 and 49.

80.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendant Krieger intentionally made material misrepresentations regarding his prior experience with PF Chang's and his ability to estimate and build out a LemonShark Makai restaurant, and that he understood at the time of making those statements Plaintiff and its investor would rely heavily upon the aforementioned in making their investment decision.

81.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendants Miller, Krieger and Winn intentionally made material misrepresentations as to their opening the LemonShark Makai restaurant in Redlands, California before Plaintiff in that Defendants each understood at the time of making those misleading statements that Plaintiff and its investor would rely heavily upon this information in making their investment decision.

82.    This claimed good faith estimate by Defendants as relied on by Plaintiff was intentionally understated based on Defendants' **May 8, 2020**, (Exhibit 3) Franchise Disclosure Document that LemonShark Franchising, LLC filed with the State of California acknowledging that the total investment necessary to begin operations of one LemonShark Makai Restaurant ranges from **$1,471,750 to $2,881,444** to begin operations under an Area Development Agreement to develop two Makai LemonShark Restaurants and one LemonShark Poké Restaurant, in that order.

83.     Defendants failed to disclose a reasonable estimate of the cost of building out the first prototype Makai restaurant, which information was reasonably know to Defendants, prior to **February 3, 2020**, nor at any time during the four months before Plaintiff entered into the leases for the franchised restaurants on **July 23, 2020**.

84.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendants Miller, Krieger and Winn intentionally made material misrepresentations as to their ability to supply and source the Poké food products and related consumables, while being aware that they had no potential sourcing within Ohio, and that they understood at the time of making those statements that Plaintiff and its investor would rely upon those statements in making their investment decision.

85.     Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendants Miller, Krieger and Winn intentionally made material misrepresentations severely underestimating the amount of staffing required to support a Lemonshark Makai restaurant, and Defendants understood at the time of making those statements that Plaintiff and its investor would rely upon those statements in making their investment decision.

86.     Plaintiff is informed and believes, that the Franchise Disclosure Document at Exhibits 1 and 2 reveals that Defendants estimates were materially inaccurate as evidenced by Plaintiff's actual investment costs, no small part of which were generated as prototyping costs based on Defendants lack of reasonable anticipation of known costs and prototyping costs that Defendants had never encountered as they had not fully conceptualized the concept:

| TYPE OF EXPENDITURE | Amount | | PLAINTIFF'S ACTUAL EXPENDITURES |
| --- | --- | --- | --- |
| | Low | High | |
| Utility Deposits, Fees, Permits & Licenses [1] | $5,500 | $12,500 | $6,000 |
| Architects' and Permit Expediter Fees [2, 11] | $15,000 | $42,000 | $36,800 |
| Construction Management Fee [2, 11] | $3,500 | $17,500 | $15,000 |
| Other Pre-Construction Costs [2] | ~~$12,000~~ $15,000 | $30,000 | - |
| Leasehold/Construction [3] | ~~$114,500~~ $200,000 | ~~$395,000~~ $450,000 | $966,060 |

- 26 -

| TYPE OF EXPENDITURE | Amount | | PLAINTIFF'S ACTUAL EXPENDITURES |
|---|---|---|---|
| | Low | High | |
| Exterior Signage | $5,000 | $18,000 | $63,500 |
| Interior Signage | $4,000 | $9,500 | $14,000 |
| POS System and Software; Back Office Computer, Printer and Related Hardware and Software; Sound System; Televisions and Office Supplies [4] | ~~$6,000~~ $12,000 | ~~$8,500~~ $15,000 | $77,500 |
| Equipment/Smallwares | ~~$45,000~~ $75,000 | ~~$59,000~~ $90,000 | $268,050 |
| Designated Furniture, Millwork and Countertops, Sneeze Guard, Trash Can Caddies & Trash Cans, Lighting Fixtures, Menu Boards & Ad Boxes, Drink Station and Beer Wall (if applicable) [5] | ~~$37,500~~ $70,000 | ~~$101,200~~ $140,000 | $124,150 |
| Opening Inventory | $11,000 | $15,000 | $25,000 |
| Beer & Wine License Costs [6] | $750 | $1,500 | $3,500 |
| Grand Opening Marketing and Promotion [7] | $2,500 | $5,000 | $15,000 |
| Franchised Location (Lease Deposit/3 Months' Rent) [8] | $10,000 | $60,000 | $75,000 |
| Insurance – Liability & Workers compensation (initial deposit) | $1,200 | $1,200 | $36,000 |
| Legal Fees/Organizational Expenses [9] | $5,000 | $15,000 | $50,000 |
| Training Expenses (Travel and Living Expenses) [10] | $3,500 | $5,500 | $3,000 |
| Initial Franchise Fee [11] | $40,000 | $40,000 | $40,000 |
| ADDITIONAL FUNDS (3 months) [12] | $20,000 | $30,000 | $75,000 |
| GRAND TOTAL [13] | ~~$341,950~~ $498,950 | ~~$866,400~~ $997,700 | $1,893,560 |

### III.   MAXIMUM POTENTIAL LIABILITY IF NO FRAUD

87.    R2P ONE LLC also known as Range 2 Poké was the Franchise of three potential operations under the trademark *Lemon Shark* ● POKÉ based on a written agreement entered into on **February 3, 2020**, hereinafter the "Franchise Agreement." (Attached hereto as **Exhibit 4**)

*Pursuant to the Franchise Agreement, section 17.2 stated:*

If this Agreement terminates due to a Default by Franchisee, the amounts to be paid by the Franchisee shall include all damages, and costs, and expenses, including reasonable attorneys' fees, incurred by Franchisor as a result of the Default, which obligation shall remain, until paid in full, a lien in favor of Franchisor against assets of the Franchised Restaurant. In addition to the foregoing, Franchisee shall pay Franchisor, within thirty (30) days following the date of termination, an amount equal to the product of two (2) multiplied by the total Royalty Fees paid (or if unpaid, payable) by the Franchisee during the twelve (12) months immediately preceding the effective date of termination to account for the actual damages that Franchisor shall suffer as a result of the termination of this Agreement…

**17.2   Prior Payments.** Franchisor may retain all fees paid to Franchisor pursuant to this Agreement, and Franchisee shall immediately pay any and all amounts remaining due to Franchisor and its Affiliates. If this Agreement terminates due to a Default by Franchisee, the amounts to be paid by Franchisee shall include all damages, and costs, and expenses, including reasonable attorneys' fees, incurred by Franchisor as a result of the Default, which obligation shall remain, until paid in full, a lien in favor of Franchisor against assets of the Franchised Restaurant. In addition to the foregoing, Franchisee shall pay Franchisor, within thirty (30) days following the date of termination, an amount equal to the product of two (2) multiplied by the total Royalty Fees paid (or if unpaid, payable) by Franchisee during the twelve (12) months immediately preceding the effective date of termination to account for the actual damages that Franchisor shall suffer as a result of the termination of this Agreement during the time period that Franchisor estimates will expire while Franchisor searches for a replacement franchisee for the Franchised Restaurant or for a replacement Franchised Restaurant location in the trade area of the Franchised Restaurant. The Parties acknowledge and agree that it would be impossible and impracticable to determine the precise amount of damages Franchisor will incur upon the termination of this Agreement due to the complications inherent in determining the amount of revenue lost by Franchisor and the uncertainty regarding the number of months that will expire while Franchisor searches for a replacement franchisee for the Franchised Restaurant or for a replacement Franchised Restaurant location in the trade area of the Franchised Restaurant. The Parties further acknowledge and agree that this calculation of Franchisor's potential damages is a reasonable, good-faith estimate of those damages. If Franchisor is unable to make this calculation because of Franchisee's failure to report the Gross Sales of the Franchised Restaurant, Franchisor may estimate the Gross Sales of the Franchised Restaurant for the applicable period based upon the historical financial information available to Franchisor at that time.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

88.   Contemporaneously with the **February 3, 2020** Franchise Agreement, the parties entered into a Franchise Agreement Addendum ("Addendum No. 1"), beginning on page No. 95 of the "Franchise Agreement." (Attached hereto as **Exhibit 5**- R2P0000889-R2P0000894) Addendum No. 1 stated:

> "Maximum Potential Liability" shall mean, subject to the global limitations below, the sum of the lesser of (i) the sum due under Section 17.2 of this Franchise Agreement, (ii) $150,000 or (iii) $500,000 reduced by all payments previously made by Franchisee or its Owners to discharge their contractual liability arising from a termination of any agreement (including this Franchise Agreement or any other franchise agreement or area development agreement) between Franchisee, its Owners or their Affiliates. Franchisor agrees that this Maximum Potential Liability shall be the complete and maximum potential financial liability or exposure of the Franchisee and all of its Owners, including the Principal Owner, and any other Person associated with the Franchisee arising from a breach of this Franchise Agreement.

> **2.   Section 1 of the Franchise Agreement (Definitions) is modified with the addition of the following definition:**
>
> "Maximum Potential Liability" shall mean, subject to the global limitations below, the sum of the lesser of (i) the sum due under Section 17.2 of this Franchise Agreement, (ii) $150,000 or (iii) $500,000 reduced by all payments previously made by Franchisee or its Owners to discharge their contractual liability arising from a termination of any agreement (including this Franchise Agreement or any other franchise agreement or area development agreement) between Franchisee, its Owners or their Affiliates.  Franchisor agrees that this Maximum Potential Liability shall be the complete and maximum potential financial liability or exposure of the Franchisee and all of its Owners, including the Principal Owner, and any other Person associated with the Franchisee arising from a breach of this Franchise Agreement.  Franchisor further agrees that Franchisee, its Owners and their Affiliates, including Affiliates operating other LemonShark locations under other franchise agreements but which fall under the Area Developer Agreement dated _____ , shall have no liability to Franchisor in excess of Five Hundred Thousand Dollars ($500,000) and that this amount shall be the maximum financial liability of Franchisee, its Owners and their Affiliates in all events regardless of the number of LemonShark locations or the contractual relationships involved.  This "Maximum Potential Liability" shall be reciprocal such that Franchisor's maximum potential financial liability or exposure to Franchisee shall be limited to the sum of the lesser of (1) any judgment against Franchisor in favor of Franchisee, or (ii) $150,000 per location, or (iii) $500,000 for all Franchise Agreements that fall under the Area Developer Agreement dated _____. For purposes of this Franchise Agreement, the agreed cap on liability in favor of the Owners and other Persons associated with the Franchisee of the Maximum Possible Liability shall be the maximum joint and several liability of all such Owners or Persons.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

89.    Contemporaneously with the **February 3, 2020** Franchise Agreement (Exhibit 4) and Addendum No. 1 (Exhibit 5), the parties also entered into an Area Development agreement. (Herein attached as **Exhibit 6-** R2P0000900- R2P0000993.**)**

A.    **REVISED ROYALTY STRUCTURE**

90.    Thereafter, the parties entered into a Franchise Agreement Second Addendum ("Addendum No. 2"). (Attached hereto as **Exhibit 7-** R2P00009940- R2P0000995) Addendum No. 2 revised the royalty fees as set forth:

> **Franchise Agreement, Exhibit A Franchise Information shall be modified to the following.**
>
> **ADDRESS OF FRANCHISED LOCATION:**  PSP A-107A, SPACE 23100, Easton Town Center, Columbus, Ohio.
>
> **REVISED ROYALTY STRUCTURE BASED ON ANNUAL GROSS SALES**
> - Below $1,000,000 gross annual sales, royalty shall be 2% of Gross Sales (as defined by the FA)
> - Between $1,000,000 -$1,999,999 gross annual sales, royalty shall be 4% of Gross Sales (as defined by the FA)
> - Between $2,000,000 - $2,999,999 gross annual sales, royalty shall be 5% of Gross Sales (as defined by the FA)
> - At or above $3,000,000 gross annual sales, royalty shall be 6% of Gross Sales (as defined by the FA)

91.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendants Miller, Krieger and Winn intentionally made material misrepresentations that the 2,250 square foot space estimate in the Franchise Disclosure Document was insufficient to sustain annual sales of over $3.2 million to sustain profitability for the LemonShark Makai restaurant model, which was unsupported by any actual knowledge, experience, or good faith estimates by Defendants Miller, Krieger or Winn as they understood the true costs of the build-out, staffing, and sourcing of food and beverages.

92.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that the correct royalty due to Defendant LemonShark from **February 23, 2021** to **February 23, 2022** was $52,391.34, or 4% under Addendum No. 2, for Annual Gross Sales of less than $1,999,999.  R2P actually made royalty payments of $49,921.45, to Defendant LemonShark from **February 23, 2021** to **February 23, 2022**. (Attached hereto as Exhibit 7.)

93.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that the total amount paid for franchisee fees, royalty, design and construction, training and etc., was paid to Defendant Lemonshark in excess of $214 thousand dollars by Plaintiff.

### B.    **EASTON FRANCHISE LOCATION**

94.    On or about **January 21, 2020**, Defendant Miller came to Columbus Ohio and visited several potential locations for the new franchise locations, and sent an email of January 26, 2020 stating:

| | |
|---|---|
| **From:** | Tobi Miller |
| **Sent:** | Sunday, January 26, 2020 2:28 PM |
| **To:** | Jeff Burghardt |
| **Cc:** | Maria Winn |
| **Subject:** | Re: Site Decisions/Progress |

Hi Jeff - I'm not 100% either on the Polaris sites.   Let's forget the second one that is turned 90 degrees.  That one has several issue in my opinion.  I wouldn't even consider the first for just a Lemonshark Poke.  But if we're doing the full Makai by LemonShark concept then I feel much better about it.  It makes it MUCH more of a destination.  With 2 patios, end cap with high glazing, and lots of signage, I think it's got potential.   But it still feels like a destination which means we need to give people a great reason to come to us.  Poke on it's own won't do it.  We need to give people a great "experiential" dining experience.

We for sure want to get in the door with those Easton sites so let's push hard on that.  If they need more info, we'll get it to them.  Just let me know.

**TOBI MILLER**

President & Co-Founder

95.    On or about **February 11, 2020**, Defendant Miller, based on his extensive experience and know how confirmed to Plaintiff that they should plan on having a staff of no more than 25 employees, in both financial models he provided to Plaintiff:

| | |
|---|---|
| **From:** | Tobi Miller |
| **Sent:** | Tuesday, February 11, 2020 2:51 PM |
| **To:** | Jeff Burghardt |
| **Subject:** | Sales Performa |
| **Attachments:** | Proforma_Makai by LemonShark Poke @ Ohio Easton.xlsx; Proforma_Makai by LemonShark Poke @ Ohio Easton_Break Even.xlsx |

**TOBI MILLER**

President & Co-Founder

| 11 | LABOR | | week | month | yr | | |
|---|---|---|---|---|---|---|---|
| 12 | Labor Hours | | 650 | | | | |
| 13 | Ave Wages | $14.00 | $9,100 | $36,400 | $473,200 | | |
| 14 | Tax (social + medicare) | 7.65% | | $3,017 | $36,200 | | |
| 15 | Workers Comp | 5.000% | | $1,972 | $23,660 | | |
| 16 | Payroll Processing Fee | 26 pay periods | $10.00 | $22 | $260 | | |
| 17 | Payroll Fee | $60.00 every 2 weeks | | $120 | $1,440 | | |
| 18 | Annual Yr-End Payroll Fees | 25 employees | | $14 | $170 | | |
| 19 | Labor State Tax | 25 employees | $287.00 | $598 | $7,175 | $(42,142) | $(505,705) |

96.    The LemonShark Makai Restaurant was opened, at 3969 Merchants Row at the Easton Town Center in Columbus Ohio ("Easton") on **February 23, 2021**.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

97.    Addendum No. 2 (Exhibit 6) indicated that the  Franchise Agreement would be modified for the parties to acknowledge that the 3,400 square foot retail store located at PSP A-107 A, Easton Town Center in Columbus Ohio, as selected by Plaintiff, would have significantly higher costs than the 2,250 square foot space estimated in the Franchise Disclosure Document, as it was a 33% larger space than anticipated.

98.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that the increase of 33% of space was still insufficient to support profitable revenue even at full capacity, and did not increase their anticipated investment by more than the 70% understated amount Defendants concede in their **May 8, 2020** Franchise Disclosure Document that LemonShark Franchising, LLC filed with the State of California, which lacked the proper space estimate provided on December 2019 to Plaintiff from Defendant Winn. See Para. 53.

**Defendants' Est. for Makai** – 3,500 sq/ft

**Plaintiff Actual for Makai** – 3,420 sq/ft





RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

99.     On **May 29, 2020**, Defendant Miller sent Plaintiff yet another variation and update on the Lemonshark Makai restaurant concept as part of an email drafted to provide potential landlords more information as to the Lemonshark business and space requirements:

| | |
|---|---|
| **From:** | Tobi Miller |
| **Sent:** | Thursday, May 28, 2020 5:30 PM |
| **To:** | Jeff Burghardt; Sherry Whay; Maria Winn |
| **Subject:** | Makai by LemonShark |
| **Attachments:** | Makai by LemonShark-Corporate Overview 5.28.2020 (1).pdf; Easton prelim option 2F WITH KITCHEN  5-21-20.pdf |

Hi Guys - So we decided to combine everything in one doc thinking that will give the best chance of Stiener actually seeing most of it.  It's easy to jump around via the table of contents links.

I would send Spencer both this doc and the floor plan we've been working on - Also attached.  They should be impressed with how much effort we've put in considering there's not even an LOI signed yet.

Let us know how it is received!!!

**TOBI MILLER**
President & Co-Founder



- 33 -
RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

100.     On **June 15, 2020**, Plaintiff received word that the Letter of Intent for the Easton lease was approved and received the proposed lease agreement.

101.     On **July 23, 2020** a lease agreement was entered between Easton Town Center, LLC and R2P One LLC, to run the Franchise in the name of LemonShark Poke & Makai Grill at the 3,400 sq./ft (not including patio) space located at Easton Town Center's 3969 Merchants Row in Columbus Ohio ("Easton") for approximately $265 thousand per year in rent. (Lease attached hereto as **Exhibit 8-** R2P0000996- R2P0001078.)

102.     On **July 28, 2020** defendant Miller sent the following email:

| | |
|---|---|
| **From:** | Tobi Miller |
| **Sent:** | Tuesday, July 28, 2020 6:21 AM |
| **To:** | Jeff Burghardt |
| **Subject:** | Re: FW: The Top 10 COMEBACK Retail Center Experiences: No. 2 Easton Town Center \| Chain Store Age |

We're sooooo excited to be going in there!! Will be a flagship store!

On Tue, Jul 28, 2020 at 4:29 AM Jeff Burghardt <jburghardt@jburghardt.com> wrote:

The Power of Easton!!

103.     On **January 3, 2021**, Defendant Miller responded to an email from the Plaintiff addressing the cost overages:

| | |
|---|---|
| **From:** | Tobi Miller |
| **Sent:** | Sunday, January 3, 2021 9:17 AM |
| **To:** | Jeff Burghardt |
| **Cc:** | Maria Winn |
| **Subject:** | Re: 2nd Addendums Franchise Agreement and Area Development Agreement |

Hi Jeff - There's no doubt that Easton was an expensive place to build out and I do think that you've planted a very big flag that will do a lot of local branding for the other columbus stores.  Let's definitely discuss when I come out there to go over everything and make  sense of it.

Here's one item that I've thought about for a bit.  I think that with 3 stores, you'll have significant volume and LemonShark can cap the royalties at 5% for each store instead of 6%.  That seems like a fair volume discount to me.  And we can implement that on the signing of the 3rd lease.  That can be written as an amendment to the development agreement.

Anyhow, talk with you tomorrow.

On Sun, Jan 3, 2021 at 8:23 AM Jeff Burghardt <jburghardt@range2poke.com> wrote:

Good morning again Tobi – happy to discuss all of this as well. And for the record the addendum is signed.

Here is the issue – even after our best efforts at budgeting last spring costs have gone beyond estimates by $400,000 - $500,000. That amount is a lot to absorb. When you are here in January I think you and I should review all the final costs of Easton. I was definitely wrong on the General Contractor cost. The interior finishes, smallwares,  HVAC, low voltage and others were significantly higher than projected. I just really want to have a discussion to review.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

104.   On **March 2, 2021**, about a month after the Easton location opened, Defendant Miller responded to an email from the Plaintiff addressing the lack of Franchisor support:

| From: | Tobi Miller |
|---|---|
| Sent: | Monday, March 1, 2021 4:58 PM |
| To: | Jeff Burghardt |
| Cc: | Sherry Whay |
| Subject: | Re: FW: Feedback |

Jeff - I don't need to calculate royalties.  You guys are fantastic partners with long term vision and together we can build lots of value. Everyone understands the stakes are high .  This is an issue about what is possible.  I've over extended Dana and Jim but I'm still doing everything I can to squeeze a bit more out without them.   I don't know if there's any room but I'm working on it.  We're all in the same boat here.......

Looking forward to our call tomorrow.

On Mon, Mar 1, 2021 at 3:43 PM Jeff Burghardt <jburghardt@range2poke.com> wrote:

We know we are all giving it our all – that is not a question.

Tobi and team, read the following – this e-mail is only pointing out what we already know in our minds and also our hearts. We as a team can get there but not when the starting line up leaves and sits on the bench too early.

I certainly look forward to our conversation tomorrow  - however there is more work to be done to accomplish our common goals and objectives.

Tobi, please review your royalty levels at 5% on $4myn in sales with 3 locations as per our agreement. You know that our desire is to go to 7 to 10 locations. Range 2 Poké is still 100% committed to that longer term view. That will deliver $2,400,000 to you in annual revenue. How can we really not commit to making our best collective efforts. We have been doing that to date.

From our end staffing remains a critical shortfall – I need Kayla, as you identified to spend more time with Dana and Jim. We haven't always been able to make adequate hours for that to work. I am spending all kinds of money on recruitment and training that is way over anything we jointly contemplated last spring. And we are guilty of other crimes that Dana and Jim can and probably have articulated to you.

All to say that we are in this together and it isn't to judge each others performance only to say we collectively have to do more to get our business were we need it to be to succeed.

I am begging you for another seven days. It will be great to talk tomorrow.

105.   Plaintiff took on the financial responsibility for the ten year lease at Easton based on the material misrepresentations made by Defendants in the Franchise Disclosure Document and Addendum No. 2, despite Defendants' knowledge that the cost estimates, so heavily relied upon by Plaintiff, to open a LemonShark Makai restaurant were a complete misrepresentation of the real costs anticipated and labor necessitated by the labor intensive Makai menu Miller had developed with the Lemonshark chef.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

106. On **July 30, 2021** Defendant Miller sent the following email:

| | |
|---|---|
| **From:** | Tobi Miller |
| **Sent:** | Friday, July 30, 2021 11:20 AM |
| **To:** | Sherry Whay; Jeff Burghardt |
| **Subject:** | Easton Restaurant Shoot |
| **Importance:** | High |

Hi Sherry - Now that the Easton restaurant is totally done construction-wise, I'm going to plan a trip there with a crew of 2 to do some video shoots for 2 days. I have 2 big items I'm trying to accomplish with this shoot:

1. Get a lot of short clips of food being prepared and plated. These shots will be edited and even sped so that they can be easily uploaded to social media for advertising and promotion purposes. Prior to arrival, we'll have a list of the menu items across all menus (Makai, Poke, Hibachi, and Bar) that we want to showcase and highlight.
2. Create a short video highlighting the restaurant itself. This includes all the interior and exterior features and guest experience.

107. On **September 29, 2021** Defendant Miller sent the following email:

| | |
|---|---|
| **From:** | Tobi Miller |
| **Sent:** | Wednesday, September 29, 2021 12:10 PM |
| **To:** | Jeff Burghardt; Jim Krieger |
| **Subject:** | Dinner Menu Trail |

Hi Jeff - and thanks for the time this morning. I thought it would be a good idea to send an email outlining the concept we discussed for creating a dinner menu trail and what we can do to help to that end.

What we're looking to do:
- 8 week trial period prior to December wherein we create a new dinner menu that excludes lunch bowls from the menu (both poke & hibachi). This menu will likely include a couple of Chef's tasting options and a couple more expensive options to help "anchor" prices a bit higher. Items like Lobster in Miso Butter, etc. Just one or 2 simple items.

How we can help:
- Corporate gives back the 2% Brand Fee during this period to help offset some of the cost of printing new menus, etc.
- At corporate expense, corporate will send at least one person to Easton to help launch and train staff for no less than 10 days
- If average ticket does not increase during the last 4 weeks of this 8 week period by at least 20%, then corporate will give back the 2% Brand Fee for R2P to use for local marketing for an entire year following this trail.

**TOBI MILLER**
President & Co-Founder

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

108.    That same day in response to the email referenced in paragraph 95, Plaintiff requested a meeting with the Defendants on **October 5, 2021** to discuss the viability of continuing their relationship given the cost overrides and failure of the Makai concept that was sold to Plaintiff before it was properly evaluated for feasibility and sustainability. The agenda set forth was provided by email:

**Review Of LemonShark – Ohio**
**Range 2 Poké LLC January – August 2021**
**Meeting Agenda – Discussion Items**

1) Capital Costs of Easton
   a) Actual vs, Forecasts/Budget

2) Design/Construction and Opening of Easton

3) Operating Performance at Easton
   a) Covid Effects
   b) Staffing – Labour Cost, Actual vs. Forecast/Modeling
   c) Management Cost

4) Sales Performance
   a) Actual vs. Forecasts/modeling
   b) Makai sales
      i)  Small Plates
      ii) Actual grill tables
   c) Server Training
   d) Brand & Culture

5) Marketing
   a) In Market – R2P One efforts
   b) LemonShark Corporate/National Support
   c) Website
   d) Como Utilization
   e) Other
   f) New Strategies

6) Royalty Payment Schedule
   a) Review of payments to date

7) OSU
   a) Construction schedule
   b) Opening timing
   c) Planning for winter 2022

8) Overall Strategy Going Forward
   a) Easton
   b) OSU

109.    On **October 5, 2021**, a Zoom call was recorded memorializing the meeting between the Plaintiff (Jeff Burghardt, Sherry Whay, and William Horschel) and Defendants Miller and Krieger and Lemonshark employee Dana Brown. Video of Zoom call attached hereto as **Exhibit 10** see R2P0001159.

110.    During the **October 5, 2021,**  Zoom call meeting Jeff Burghardt articulated the substantial cost overages and the failure of the Franchise Disclosure Agreement to any meaningful way predict Buildout/Development costs or Operational costs as memorialized in the Document he emailed to Defendants prior to the meeting:

| | *Original LSP Estimates* | *Final Cost* | *Variance* |
|---|---|---|---|
| Architect & Engineering | $15,000 | $36,800 | $21,800 |
| Construction Administration | $15,000 | $15,000 | - |
| Estimated Construction Cost | $330,120 | $554,600 | 224,480 |
| Revel POS System | $8,200 | $15,050 | 6,850 |
| Interior Furniture | $15,000 | $37,500 | 22,500 |
| Booths | | $15,650 | 15,650 |
| Menu Boards | $1,200 | $700 | (500) |
| Cabinetry/Wood Wall Décor | $45,000 | $54,000 | 9,000 |
| Kitchen Equipment | $45,000 | $97,155 | 52,155 |
| Smallwares | $8,000 | $48,100 | 40,100 |
| Glassware | | $3,385 | 3,385 |
| Kitchen Cambros/Bon Chef | $1,000 | $4,100 | 3,100 |
| Downdraft Grills | $57,500 | $14,500 | (43,000) |
| Ansul System/Grease Ducts | $134,000 | $0 | (134,000) |
| Actual HVAC | | $231,960 | 231,960 |
| Exterior Signage | $10,000 | $45,550 | 35,550 |
| Interior Graphics | $7,500 | $13,020 | 5,520 |
| Walk-in Cooler/Freezer | $11,500 | $20,830 | 9,330 |
| Office Set Up | $1,800 | $3,500 | 1,700 |
| Low Voltage Cost | $9,500 | $47,500 | 38,000 |
| Draft Lines | | $6,990 | 6,990 |
| Additional Kitchen Modifications post LSP Visit | | $7,320 | 7,320 |
| 2nd Ice Machine | | $2,670 | 2,670 |
| F of H Modifications post LSP Visit | | $10,300 | 10,300 |
| TV Supply | | $2,440 | 2,440 |
| Hostess Stand | | $1,950 | 1,950 |
| Transformer Relocation | | $11,250 | 11,250 |
| Uniforms | | $6,414 | 6,414 |
| Gift/Business Cards | $270 | $1,470 | 1,200 |
| **Totals** | **$715,320** | **$1,309,704** | **$594,114** |

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

111.    As part of the document that Jeff Burghardt emailed Defendants on **October 5, 2021**, was the record of expenses that Plaintiff had made from October to April to July to September, as shown herein:

| Building Expenses | Oct-19 | Apr-20 | Jul-20 | Sep-20 |
|---|---|---|---|---|
| **Development Expense** | | | | |
| Area Development Fee | $ 67,500 | $ 67,500 | $ 67,500 | $ 67,500 |
| Architect/Design Fee | 15,000 | 15,000 | 16,950 | 22,000 |
| Permit Expeditor | 5,000 | 5,000 | | |
| Construction Management | 17,500 | 17,500 | 17,500 | 15,000 |
| Permitting | 7,500 | 7,500 | 8,500 | 8,500 |
| Sub-Total | $ 112,500 | $ 112,500 | $ 110,450 | $ 113,000 |
| | | | | |
| **Construction Expense** | | | | |
| Owner Supplied Items: | | | | |
| Kitchen Equipment | | 50,000 | 50,000 | 87,700 |
| Interior Finishes | 62,500 | 35,500 | 35,500 | 60,000 |
| Interior Signage | 7,000 | 7,000 | 7,000 | 15,000 |
| POS System | 7,250 | 7,500 | 7,500 | 8,000 |
| Other Low Voltage Equip | | 7,500 | 7,500 | 40,000 |
| Smallwares | 25,000 | 25,000 | 25,000 | 25,000 |
| Freezer/Cooler | | | | 12,150 |
| Makai Grills | | 14,500 | 15,000 | 15,000 |
| Freight | | | 6,500 | 6,500 |
| | | | | |
| Sub-Total | $ 101,750 | $ 147,000 | $ 154,000 | 269,350 |
| **Outside Construction Expense:** | | | | |
| General Contractor | 190,000 | 357,000 | 699,300 | 840,000 |
| Exterior Signage | 12,000 | 12,000 | 50,000 | 44,000 |
| Patio | - | - | 15,000 | 60,000 |
| Barricade | | | | 19,000 |
| | | | | |
| Sub-Total | $ 202,000 | $ 369,000 | $ 764,300 | $ 963,000 |
| Total before Tenant Allowance | $ 416,250 | $ 628,500 | $ 1,028,750 | $ 1,345,350 |
| Tenant Allowance | $ (60,000) | $ (280,000) | $ (595,000) | $ (595,000) |
| Net Building Expense | $ 356,250 | $ 348,500 | $ 433,750 | $ 750,350 |

112.    During the Zoom Call Defendant Miller made the following statements:

27:45 - 29:15



TOBIAS MILLER: *I mean it seems to us there was, we originally came to you guys and said here's this concept and it's different and here's what it is, and we're basically stacking two businesses on each other there is the poke and then there is the Makai, we didn't have a poke bar in the restaurant, right, that was not part of the original plan and you guys really wanted to do that. That added a lot of expense it pulled out, you know, tables that could have been used for other purposes. I think that was not a very good decision it certainly. It's almost like building*

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

1

2

3

*a restaurant within a restaurant, uh but that's fine, you guys wanted to make that decision and we went with that. Ultimately we never, I don't think once, pushed anything done your guys throat and said yeah do this. We really tried to give you our opinion and then let you guys run with it, and I think there's some decisions that we need to reevaluate here moving forward, umm…*

4

5

JEFF BURGHARDT: *I think that's fair Tobi in terms of saying like your not cramming things down our throats  I mean that's the part of the partnership which I think works well, I mean we tried to put…*

6

7

TOBIAS MILLER: *I'm not…At the end of the day I think we made a bad decision in not standing stronger keeping, but I appreciate what your saying.*

8

34:54 –37:18

9

10

11

12

13

14

TOBIAS MILLER: *We know the Poke market pretty well. We've been doing poke for five years before you know you guys came to the table, or four. **We know that Poke is…does not bring in enough dollars per square foot**, we know that, that's why we developed Makai and if you remember from one of our early conversations, I literally said were stacking two businesses, **Poke is really great at lunch but doesn't bring in enough dollars for nights and especially not weekends**. Especially not for a center like where you guys are at, with your occupancy. So the idea, is to stack two business, and when we through the first menu, first we wanted to not have the poke bar, right, so that sort of blurred a little bit of the lines between the lunch and the dinner.  You know one of Jim's biggest concerns with the Poke bar and you'll probably remember him saying this, was that he was concerned people are going to go to the Poke bar, get their, their bowl, and then go sit at a table, right….*

15

JEFF BURGHARDT: Which hasn't happened.

16

17

18

19

20

21

22

23

24

TOBIAS MILLER: *Hasn't happened, but it's also because we are providing the poke bar at their table at the wrong times by including it in the menu, that's my point. The first menu we sent you guys. It's another one of these when we kind of back and forth and went but you guys decided at the end, but never ever, ever did we want to include bowls for dinner, that was always to us a lunch menu and I would like us all to think about as customers renting tables, right, their out to have an experience and their basically renting that space from us and we need a certain amount of dollars to make it work, otherwise we are subsidizing their experience. Right.  You need a minimum buy in. If you…you don't want to allow people to go to a nice IMAX movie for $6, if they can, you need to have a minimum buy-in, the minimum buy is $12 or $16 bucks and if they want to get snacks on top of that great. The minimum buy-in is not high enough selling bowls. Its too much food it's not high enough. We have to think of Makai as a higher spend concept, and I'm sorry -I'm going to let you go back to what you were saying-but  its not something we just challenged you last week. This is something that before we opened it was.. it goes back to then.*

40:12

25

26

27

28

TOBIAS MILLER: ***To me the one thing we've proven, is that the current model does not work***, *and honestly **I'm concerned about the sustainability of this restaurant** if we don't make big changes, and one thing I have learned in my time with doing restaurants stuff – which I have been involved for ten years now- is small changes portend to small results. Sometimes you need to make big changes.* (Zoom Call attached hereto as **Exhibit 10-R2P0001159**).

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

113.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendants have never disclosed the facts as set forth in paragraph 98, as articulated by Defendant Miller, in any Franchise Disclosure Document Lemonshark have released to the public, and had Defendants provided Plaintiff these facts in 2019, this dispute would not exist as Plaintiff would have identified a different viable franchise opportunity.

114.    During the Zoom call meeting, Defendant Miller asked Plaintiff to use a new menu for a trial period of eight weeks, which he believed would drive more sales. (As memorialized in email of September 29, 2021 as referenced in paragraph 105, above.) In exchange of having the menus changed, Defendants promised to forgo Plaintiff's 2% of marketing/institutional fees for that trial period, if the sales would not increase by 20%. Defendants further in the meeting articulated that if the average check size is increased by 20% after the eight weeks, they will forgo the 2% of marketing/institutional brand fees for the next year.

115.    The average check price prior to the new menu was $41.34, during the eight week trial the average ticket price was $44.91 which was an increase of $3.60 which is not even a 10% increase. Defendants failed to reconcile on the promised made on the Zoom call or email.

116.    Plaintiff is informed and believes, and on the basis of that information and belief alleges, that Defendant Miller and Gottlieb intentionally avoided substantive communications to address the issues addressed during the October 2021 meeting and went radio silent until 2022 when Plaintiff engaged counsel to communicate with the Franchisor.

117.    The Easton LemonShark Makai Restaurant was closed by Plaintiff, on **February 23, 2022**



**LemonShark Poke CBUS** is at **LemonShark Poke CBUS**.
February 23 · Columbus, OH · ☺

To our Cbus Community,
As of today, Lemonshark Poké & Makai Grill is closed. We want to thank Easton and Greater Columbus for welcoming us with open arms and showing us the true meaning of Ohana, family.
It has been a pleasure to serve you.
If you would like to contact us, please email:
Community@lemonsharkcbus.com.
Mahalo.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

1    118.    Plaintiff is informed and believes, and on the basis of that information and belief

2  alleges, that Defendants Miller, Krieger and Winn utilized startup costs for the LemonShark Poke

3  model to intentionally understate the cost with the goal of using Plaintiff's restaurant as a model

4  to sell additional franchises, as depicted below: See Para. 59 last photo.



RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

119.    Upon information and belief, Plaintiff alleges that there are emails and text messages between Defendants Miller and Gottlieb evidencing their intention to misrepresent facts to Plaintiff so that they could use the Easton location as a test case for the Makai restaurant concept.

C.    **OSU LEASE**

120.    On **March 5, 2021** a lease agreement was entered between Redstone Realty Company LLC, and R2P two LLC to run the Franchise in the name of LemonShark Poke & Makai Grill at 1556 North High Street in Columbus Ohio, on the campus of Ohio State University ("OSU") for approximately $178 thousand per year in rent. (Attached hereto as **Exhibit 9-** R2P0001079- R2P0001158) This agreement was also signed by Mr. Miller on behalf of Defendant LemonShark.



121.    The OSU location was substantially built out prior to **March 1, 2022 and** projected to open in the summer of 2022, but was never completed or opened.

D.    **REDLAND FRANCHISOR MAKAI RESTAURANT**

122.    Plaintiff's increased investment costs were based on Defendants' claims of well-researched anticipated financial gains as a result of Redland's conversion from the Poke to Makai restaurant model. Plaintiff was unaware that they indeed would be the test case for this new model rollout.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

123.    In Defendant Miller's email of **February 13, 2020** at 4:50 PM, he stated:

| From: | Tobi Miller |
|---|---|
| Sent: | Thursday, February 13, 2020 4:50 PM |
| To: | Jeff Burghardt; Sherry Whay |
| Subject: | Great Meeting up this week! |

Hey Guys - It was great getting together over the last couple of days.  And really great to finally meet you Sherry in person.  And your daughter is lovely and it was great meeting her too!  So cool you're all working together on "stuff".

I said this to Jeff on the phone but I just wanted to reiterate it here.  My thoughts on Easton changed a bit when we met up with Spencer who I like very much and think she's a great resource for us moving forward.  I think with Easton, we can actually go 2 ways.

1.   If there's an opportunity to take a very small space in a food court situation, like a kiosk, we could do straight poke concept there.  We've had experience with running food out of a kiosk and it's challenging in terms of ops and customer perception (some people only think you can get decent pretzels from a kiosk but not "real" food).   But these could be overcome and Spencer did give us some good numbers that another brand does there in this environment.  I think we just have to temper our expectations a bit as food courts come with challenges and competition in general.  But we could pull it off for sure.
2.   Second option is the larger store out near the Cheesecake Factory and others wherein we're really going for the full "experiential dining" category along with the poke quick service.  This is what we've been discussing.  This in my opinion is really a "shot for the stars" decision.  But I think if we go this way, everyone will have more comfort as time goes on, especially as we get Redlands up and running.  It's slated to be done in 3 weeks.  Then we open 7-10 days after.

These are almost opposite ends of the spectrum but I think either would work in Easton.  Something in the middle might not.   At OSU, I think we have more flexibility to play with the quick vs experiential dining elements due to the different local market environment and customer base/needs.   We could play up the QSR there for example in various ways to try and meet the expected demand for quick and healthy, etc.

124.    On **June 16, 2020**, Plaintiff raised the following concern:

| From: | Jeff Burghardt |
|---|---|
| Sent: | Tuesday, June 16, 2020 1:30 PM |
| To: | Maria Winn; Tobi Miller |
| Cc: | Sherry Whay; Jack Ostrowski; Jim Krieger; aklein@demandbrandsgroup.com |
| Subject: | FW: Easton Lease and next step questions |
| Attachments: | 2773383(1)_Urban_ Lemon Shark Lease.DOCX; 2773185(1)_ETC Central Block Lemon Shark PSP 6-15-20.PDF; Lemon Shark Poké and Makai Final LOI  - Easton - 5.26.20.rtf |

Good afternoon Maria and Tobi – so the very good, long awaited news is that our LOI for Easton has been approved! Received word yesterday morning.  Now we have the first draft of their proposed lease. I think a number of topic areas to review with LemonShark as we complete the lease. We need to prepare for a direct presence in Columbus when the lease is signed and Easton starts its promotion of " coming soon to our entertainment district.".

3.   I recognize that Covid-19 has caused a serious delay in the development of Redlands. I know that you have been very accommodating in allowing for major changes to the Easton design and subsequently to the OSU site. One of the challenges is that we can't yet touch or feel Makai by LemonShark Poké directly. We cant get that instant confirmation of the feel, atmosphere of walking into the Redlands completed store. I expect that what we may pay as much as $850,000 for the Easton build out. A large sum of money. How far away are you from completing Redlands? What is the state of completion? We had thought that perhaps Maryn in San Diego could visit Redlands to at least represent us in experiencing the feel of the restaurant. Additionally I have some confusion about our ability to influence or be part of the next stage of the Easton design. This area would be finishes, lighting, furniture, etc. I understand that Alton is planning these elements in detail right now. We have only seen one picture rendering of Redlands – all be it a great photo, it was enough for Steiner's approval! – We super like the what we have seen as well. But given the prominence of our location it would be that little bit better to touch and feel more directly or be part of the selection. I assume that the upfront poké bar will carry the same feel as the Makai rendering.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

125.     In response to the above, Defendant Miller responded in his email of **June 16, 2020**, at 5:47 PM:

| | |
|---|---|
| **From:** | Tobi Miller |
| **Sent:** | Tuesday, June 16, 2020 2:47 PM |
| **To:** | Jeff Burghardt |
| **Cc:** | Maria Winn; Sherry Whay; Jack Ostrowski; Jim Krieger; A Klein |
| **Subject:** | Re: FW: Easton Lease and next step questions |

Hi Jeff - There is a lot here for sure!!!   Here are my quick responses:

   3.   Anyone is welcome to come to Redlands anytime.  There are people working there daily including some of us.  If you want up-to-dates on the particulars, please feel free to give Alton a call and he can tell you where we're at in the process.  I do that everyday!  The design process will be exhaustive.  Once the Reflective Ceiling Plan gets finished, Alton will create a "Finish Schedule" for all design elements.  Then, we'll have our 3D render-er create the mock-ups from different angles and different perspectives.  At that point, we will have a good understanding of our "starting place" and can make any changes, upgrades as we need to until we're all satisfied.   My guess is that process can happen pretty soon and run parallel to the architects finishing out the rest of the construction drawings.  The important thing is that we'll all agree together that we love all elements of the design before it's finalized.

126.     On **June 17, 2020**, Plaintiff again reached out to Defendant Miller asking:

| | |
|---|---|
| **From:** | Jeff Burghardt |
| **Sent:** | Wednesday, June 17, 2020 8:17 AM |
| **To:** | Tobi Miller |
| **Cc:** | Maria Winn; Sherry Whay; Jack Ostrowski; Jim Krieger; A Klein |
| **Subject:** | RE: FW: Easton Lease and next step questions |

Is Redlands to a point that it makes sense for Maryn to visit? It is finishes that are important to view not so much operations.

Thank you
Jeff

127.     On **June 17, 2020**, Alton Klien responded that:

| | |
|---|---|
| **From:** | A Klein |
| **Sent:** | Wednesday, June 17, 2020 9:37 AM |
| **To:** | Jeff Burghardt |
| **Cc:** | Tobi Miller; Maria Winn; Sherry Whay; Jack Ostrowski; Jim Krieger; A Klein |
| **Subject:** | Re: FW: Easton Lease and next step questions |

Jeff,

Please note that the Redlands store is a remodel that is reusing alot of existing expensive finishes (on walls, like wall tile) that will not be used in your stores.

Per our call yesterday we can work together on locations of finishes and wall graphics, but not their actual specs. those are set as our brand standards.

Thank you,
Alton

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

1

2     128.    Again on **July 8, 2020**, Plaintiff mentioned to Defendant Winn that:

3
| From: | Sherry Whay |
| --- | --- |
| Sent: | Wednesday, July 8, 2020 1:50 PM |
| To: | Maria Winn; Jim Krieger; Tobi Miller |
| Cc: | maryn@fairwhaymgmt.com |
| Subject: | Thank You |

All,
Apologies for sounding frustrated at times, but we just want to get this absolutely right and kick ass for everyone involved.
We will be sending a summary and follow up from our call tomorrow.
Hope all is coming along nicely with Redlands; once open, Maryn will make a trip up to check it out!
Appreciate all of you,

Sherry

9     129.    Upon information and belief, Plaintiff alleges that at the time the franchises were

10    offered Defendants substantially and significantly misrepresented many aspects of the franchise

11    offering and regarding Defendant's experience and expertise, particularly with regard to the

12    LemonShark Makai Restaurant concept and the viability of the Lemonshark Poké restaurant

13    based on Defendants actual knowledge of viability, as articulated on October 5, 2022. Exhibit 10.

14    130.    Upon information and belief, Plaintiff alleges that the LemonShark Makai

15    Restaurant LemonShark concept is, in reality, was a different franchise offering that required

16    separate disclosures and representations from Defendants, rather than those they used with their

17    LemonShark Poké Restaurant model.

18    **E.    DEFENDANTS HAD NOT DEVELOPED THE MAKAI CONCEPT
       SUFFICIENTLY TO SELL IT, MUCH LESS PROPERLY DISCLOSE.**

19    131.    Upon information and belief, Plaintiff alleges that Defendants' lack of expertise

20    forced Plaintiff to do the development work that Defendants should have done before offering

21    this format to Plaintiff.

22    132.    Upon information and belief, Plaintiff alleges that Defendants lacked the

23    knowledge, know-how, or experience to support the development, build-out, operations,

24    promotion and marketing of a LemonShark Makai Restaurant.

25    133.    Plaintiff is informed and believes, and on the basis of that information and belief

26    alleges, that Defendants failed to provide detailed design, assistance and administrative support to

27    Plaintiff in its Franchisor capacity.

28

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

134.    Defendants projected monthly wage figure was $60,000 and the actual averaged total wage cost incurred was over $91,100 per month. It was a 34% difference in staffing cost.

135.    Upon information and belief, Plaintiff relied on Defendants for their real estate or construction expertise when they signed the franchise agreement and the cost of that resulted in being over 70% off of their estimates, even accounting for an increase in square footage by Plaintiff, because Defendants failed to anticipate fundamental build costs. The following is a non-exhaustive list of fundamental design flaws that someone with the expertise and experience that Defendants feigned would have accounted for:



a)      Defendants' had noodles as part of their food offerings in their concept menu, but failed to provide a cooking apparatus to boil water in their construction design, resulting in the need for add on devices that interfered with the aesthetic design.

b)      Defendants' had multiple deep fried items as part of their food offerings in their concept menu, but failed to provide for filtering of the hot oil used for deep frying, resulting in the need for add on device that interfered with space and increased labor costs.

c)      Defendants failed to have the relationships with the soda and beer vendors they claimed and Franchisee had to pay for the lines for these liquids being laid through the restaurant, at a cost not anticipated based on Defendants representations.



RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

d)      Defendants failed to maintain quality products as to food items and did not have the relationships and sourcing they claimed. See **August 2, 2019**; **January 1, 2021** and **March 17, 2021** emails.

| | |
|---|---|
| **From:** | Jim Krieger |
| **Sent:** | Wednesday, March 17, 2021 7:36 AM |
| **To:** | Jeff Burghardt |
| **Cc:** | Kayla King |
| **Subject:** | Re: SeaScape Product that was FedExed to LemonShark Ohio |

It is not a substitute, as thought it is just the division that it comes from and Thunder Bay is Seascape when out of East Coast distribution..

Noe is going to send an email as well explaining And apologies for me not being in the know on the packaging... It's hard to keep up with shipping, packing labels and some of that stuff unless they tell us specifics but I own that one..

The good news is, we have a fantastic product in house and we know now so should be smooth sailing from here on this vendor.. I will work on JFC

Jim

136.    Defendant's original model had projected of the need for one General Manager, but demanded later that an Assistant General Manager, Kitchen Manager and Assistant Kitchen Manager were needed. The original projection was $70,000 annually verses the actual cost of $252,500 just for managers' salaries.

137.    Defendant's lack of expertise and experience was proved when substantial changes in decisions were made during the construction and cost evaluation for OSU location. Plaintiff alleges that substantial material changes were made in design and construction of OSU.

138.    Upon information and belief, Plaintiff alleges that the Makai concept restaurant was agreed on or about March of 2020, however a detailed menu for the restaurant was not presented until **November of 2020**.

139.    Upon information and belief, Plaintiff alleges that no marketing support was provided by Defendants including advertising and social media awareness for Makai concept restaurant, which is evidenced by numerous emails requesting high quality pictures of each dish on the menu, but Franchisor failed to provide in a reasonable time.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

FIRST CLAIM FOR RELIEF
*FRAUD AGAINST ALL DEFENDANTS*

140.    Plaintiff restates and re-avers the allegations in the preceding paragraphs as though fully set forth herein and hereby incorporated by reference.

141.    Plaintiff alleges that each Defendant individually made intentional misrepresentations or concealed material fact(s) and did so intending to harm Plaintiff.

142.    Plaintiff alleges that no franchise agreement or other contract between the parties was created because Plaintiff's consent was obtained by fraudulent misrepresentations of material facts by the Defendants.

143.    Prior to Plaintiff entering the above Agreements, Defendants made some or all of the following misrepresentations to Plaintiffs and concealed material information, including but not limited to, the following:

a.    Total investment necessary to begin operations of one LemonShark Makai Restaurant ranges from $372,450 to $898,900 (FDD- Exhibit 2);

> **Area Development Program**. Under the Area Development Program, we will assign you a defined area within which you must develop and operate 3 or more LemonShark Restaurants. As an example, the total investment necessary to begin operations under an Area Development Agreement to develop 2 Turnkey LemonShark Restaurants and one Food Court/Kiosk LemonShark Restaurant, in that order, ranges from $372,450 to $898,900. This includes between $76,000 and $117,000 that must be paid to us or our affiliate to begin operations of your first Turnkey LemonShark Restaurant.

b.    That in 2019 Defendants were well organized, well experienced and well-staffed as to the implementation and cost estimates of the Lemonshark Makai concept, including, but not limited to, buildout of a Lemonshark Makai Restaurant and operations of a Lemonshark Makai Restaurant;

> **LemonShark System**
>
> We and the Operating Company have developed the LemonShark system ("**LemonShark System**") for the operation of upscale and sophisticated fast casual restaurants ("**LemonShark Restaurants**") that offer freshly prepared mainland sustainably sourced Hawaiian style ahi tuna and salmon known as "**poke**," with proprietary sauces and marinades, toppings and rice, salads, other food products, side dishes and non-alcoholic beverages for on-premises and off-premises consumption under the trade name "**LemonShark**" and other related trademarks, service marks, logos and commercial symbols (collectively, the "**LemonShark Marks**").

> References in this Disclosure Document to "**Franchised Restaurant**" and "**Franchised Restaurants**" include a "**Turnkey LemonShark Restaurant**," a "**Turnkey Makai by LemonShark Restaurant**" and a "**Food Court/Kiosk LemonShark Restaurant**" unless otherwise stated.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

c.  That Defendants will be responsible and may be relied upon for sourcing the food to Plaintiff and they had distribution agreement with Sysco, Coca-cola, and others;

> A.      Franchisor and Franchisor's Affiliate, LemonShark Operations, LLC, a California limited liability company (the "**Operating Company**"), have developed the "**LemonShark System**" for the establishment and operation of upscale and sophisticated fast casual restaurants ("**LemonShark Restaurants**") that offer freshly prepared mainland sustainably sourced Hawaiian style ahi tuna and salmon known as "**poke**", with proprietary sauces and marinades, toppings and rice, salads, other food products, side dishes, craft beer and wine and non-alcoholic beverages for on-premises and off-premises consumption under the trade name and service mark "**LemonShark**" and other related trademarks, service marks, logos and commercial symbols (collectively, the "**LemonShark Marks**").

d.  That Plaintiff could operate a Lemonshark Makai Restaurant with 25 or less employees;

| Type Of Expenditure | Amount | | Method Of Payment | When Due | To Whom Payment Is To Be Made |
|---|---|---|---|---|---|
| | Low | High | | | |
| **ADDITIONAL FUNDS** (3 months) [12] | $20,000 | $30,000 | Cash | As Incurred | LemonShark Approved Suppliers & Employees |
| **GRAND TOTAL** [13] | **$341,950** | **$866,400** | | | |

> 12.     You must, at all times, maintain adequate reserves and working capital sufficient for you to fulfill all of your obligations under your Franchise Agreement and to cover the risks and contingencies of your Franchised Restaurant for at least 3 months. The estimates provided above include estimated employee wages, 3 months of inventory (including restaurant equipment, beverage ingredients and food products), facility expenses, opening cash, and other miscellaneous expenses incurred before opening and during the first 3 months of operations. These estimates do not include finance charges, interest and related costs that you may

e.  That Defendants have managed and have experience in both smaller and larger format restaurants;

> **ITEM 2**
> **BUSINESS EXPERIENCE**
>
> **Tobias G. Miller – Co-Founder and President**
>
> **Richard J. Gottlieb – Co-Founder and Chief Executive Officer**
>
> **Jim Krieger – Chief Operating Officer**
>
> **Maria L. Winn – Director of Franchise Sales & Communications**

f.  That Defendants had over 20 franchise stores in operation since around **November 7, 2019**;

| Outlet Type | Year | Outlets at the Start of the Year | Outlets at the End of the Year | Net Change |
|---|---|---|---|---|
| **Franchised** | | | | |
| | 2016 | 0 | 0 | 0 |
| | 2017 | 0 | 2 | +2 |
| | 2018 | 2 | 11 | +9 |
| **Company-Owned** | | | | |
| | 2016 | 0 | 1 | +1 |
| | 2017 | 1 | 3 | +2 |
| | 2018 | 3 | 3 | 0 |
| **Total Outlets** | | | | |
| | 2016 | 0 | 1 | +1 |
| | 2017 | 1 | 5 | +4 |
| | 2018 | 5 | 14 | +9 |

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

g.   That Defendants were remodeling their Redland store from a LemonShark Poké

restaurant to a new LemonShark Makai Restaurant concept and Plaintiff would not

be the first to adopt this concept, and that Redlands would reopen in three weeks

from **December 13, 2019** as a Makai restaurant before Plaintiff's restaurant;

> Operating Company currently owns and operates 3 LemonShark Restaurants (the "**Company-Owned Restaurants**") of the type being franchised under this Disclosure Document, at 4235 North University Parkway, San Bernardino, California 92407, which opened for business as a Bratworks Restaurant on September 18, 2014 and which converted operations to a LemonShark Restaurant on October 15, 2016; at 360 Orange Street, Redlands, California 92374, which opened for business as a Bratworks Restaurant in June 2015 and which converted operations to a LemonShark Restaurant on December 14, 2016; and at 72840 Highway

h.   The Defendants failed to disclose the Makai Grill concept was owned by another

Franchise company to whom they were not affiliated, or otherwise disclose them

as competition as required by Franchise law;

i.   That Defendant LemonShark had a franchisee in San Diego operating under the

Makai Restaurant concept on **December 16, 2019**; and

j.   That Defendants had a successful restaurant system and other Franchisees, such as

Michael Kessler, and that Orlando, NOLA, and Redlands were profitable locations

in December 2019;

144.   The true facts were misrepresented or omitted, on information and belief, and

were, as follows:

a.   Total investment necessary to begin operations of one LemonShark Makai

Restaurant, as admitted by Lemonshark, was more reasonably in the range of

$1,471,750 to $2,881,444.

b.   Total investment necessary to begin operations of one LemonShark Poké

Restaurant, as admitted by Defendant Miller, was underestimated in the Franchise

Disclosure document to the Vista California franchisee location, as constructed in

2018, by as much as 50%;

c.   Defendants had no experience in running a Makai style restaurant and they

induced Plaintiff to fund and develop the new franchise model based on

Defendants' knowledge of the shortcomings of the LemonShark Poké Restaurant

model for evenings and weekends;

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

d.     Defendants were unable to provide any meaningful help in sourcing food for Plaintiff's restaurant located in Ohio;

e.     Defendants demanded a team of three times the staff estimated in the Franchise Disclosure Document to operate the restaurant at the Easton location;

f.     Defendants failed to provide basic design layout for kitchen space and common food equipment that was necessary to operate a restaurant of either Poké or Makai regardless of its size, including, but not limited to, lack of outlets, lack of space and design for making food, lack of storage, lack of operability, and general efficiency of food preparation and delivery;

g.     Defendants' Redlands Lemonshark Makai restaurant opened a year after represented to Plaintiff; and

h.     Plaintiff's Easton location was the first opened Makai concept restaurant.

145.   The acts described above constitute intentional fraud and deceit under California law. As alleged in detail above, Defendants LemonShark Franchising, LLC, Tobi Miller, Richard s. Gottlieb, James Krieger and Maria Winn all made material affirmative misrepresentations of fact and/or knowingly concealed or suppressed material information intending to induce Plaintiff, inter alia, to enter into franchise agreement, area development agreements and, lease agreements, to continue to invest in those franchises, and to remain in the system, and to pay Defendants their royalties in the process.

146.   As further alleged in detail above, Defendants knew that the affirmative misrepresentations of fact were false and/or knowingly suppressed material information that should have been revealed to Plaintiff. Plaintiff, at the time these misrepresentations were made by Defendants, and at the time Plaintiff took the actions alleged herein, was ignorant of the falsity of the representations and believed them to be true. The individual defendants had actual or apparent authority to speak and act for LemonShark, LLC because they were LemonShark's key officers and executives.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

147.   Defendants knowingly concealed or suppressed these facts because to disclose them would have revealed the potential financial losses to Plaintiff, Defendants intended to deceive Plaintiffs by concealing these facts.

148.   Defendants not only intended to induce reliance, but were successful in inducing actual reliance by Plaintiff. Plaintiff justifiably relied upon Defendants' misrepresentations of fact and upon Defendants' failure to reveal material information that Defendants instead concealed. Plaintiff was damaged as a direct and proximate result of its justifiable reliance upon Defendants' misrepresentations of fact and upon Defendants' failure to reveal material information that Defendants instead concealed.

149.   At the time Defendants made the above misrepresentations and omissions, Plaintiff was ignorant of their falsity and could not, in the exercise of reasonable diligence, have discovered Defendants' secret misrepresentations, as only Defendants possessed that information. Plaintiff only discovered the falsity of the above misrepresentations within the last year.

150.   In justified reliance on Defendants' material misrepresentations Plaintiff was induced to enter into the Franchise Agreement and Area Development Agreement and open a LemonShark Makai restaurant in Columbus, Ohio, and build out another one, paying Defendants' the above franchise fees, and expend significant other sums on equipment directed by Defendants, inventory, operating costs and other items, and take the other actions above. Had Plaintiff known of the falsity of Defendants' above representations, Plaintiff would not have entered into the Franchise Agreement and Area Development Agreement, expended the above sums, and taken the actions described herein.

151.   Plaintiff has been damaged by these fraudulent misrepresentations in monies spent prior to April 1, 2022 in excess of $4 million, and has further exposure equaling total losses of $7 million.

152.   As a direct and proximate result of Defendants' fraud, Plaintiff is entitled to damages and to rescission of the Area Development and alleged other agreements, restitution and ancillary damages. Plaintiff has been damaged in a sum not yet fully ascertained which they are

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

entitled to recover. Plaintiff will seek leave to amend the claims to set forth the amount when more fully known or at the time of the trial.

153.    Defendants' conduct has been malicious, fraudulent, and oppressive and entitles Plaintiff to an award of punitive and/or exemplary damages.

SECOND CLAIM FOR RELIEF
*NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS*

154.    Plaintiff restates and re-avers the allegations in the preceding paragraphs as though fully set forth herein and hereby incorporated by reference.

155.    In the alternative, Defendants above misrepresentations were made negligently to Plaintiff without regard to their truth and falsity.

156.    Plaintiff relied on Defendants' representations that they could oversee and design a "turnkey Lemonshark Makai Restaurant," but Defendants provided incomplete and ill-conceived designs that demonstrate their ignorance or ability as demonstrated by the following non-exhaustive list of issues that escalated build out costs or require rebuilding to address the deficiencies in Defendants' incomplete concept:

- Redundant poke stations – created extra labor cost and took away valuable working space in the back of the house.
- Lack of storage throughout the Bar and Restaurant.
- Failure to anticipate the space required for staff in the back of house and in the final preparation area front of house as dictated by the preparation and storage of menu items provided by Franchisor.
- No electrical outlets anywhere in the front of house and particularly customer seating area- customers appreciate being able to charge their phones.
- Failure to anticipate Bar storage for working Bar and also proper liquor inventory storage.
- Ansul System- insisted on individual systems for each Makai table grill- did not properly research regulations or feasibility.
- Revel system – add-ons to the POS hardware that doubled the cost of this equipment.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

- Failure to specify proper wall materials in front grill area, use of FBR material instead of stainless steel that led to melting of material and cleaning/staining issues.

157.    In justified reliance on the above representations of Defendants, Plaintiff believed that Franchisor would provide reasonable marketing support as demonstrated by the following non-exhaustive list of issues support was inadequate or non-existent:

- Failed to provide professional photography for each dish referenced on the menu.
- Franchisor app for customers, "Como" (Customer Loyalty Rewards Program) was not stable and did not support Makai.
- Franchisor website was focused on Poké and not Makai, and failed to support new concept of Range 2 Poké restaurants.
- Training was inadequate and inconsistent, and failure was blamed on the educational level of employees hired, ignoring the consumer market at issue.
- Lack of National Vendors as was repeatedly promised and advertising in the Franchise offerings, much less a sustainable cost effective food source for Franchisees.
- Warranty or support equipment or supplies that Franchisor dictated but failed to serve its purpose or operate in the manner advertised – required removal and replacement of ice machine, sandwich refrigeration unit used for poké preparation, walk in refrigerator.
- Failure to adjust the Menu to reduce staffing and food waste costs generated from the complexity of preparation and numerous ingredients.
- Failure to provide proper equipment to make specific menu items, for example meat ball press (requiring separate circuit box) or ability to boil water.
- Failure to have the executive chef visit and support the location and menu.
- Without notice abandoned the Naranga software system. This system was presented as the key communication tool between the franchisor and franchisee for all operational manuals and training tools. Was never functional for operations and limited the amount of documented operational and training materials. https://naranga.com/
- Training for the General Manager was limited to Poké training only in California. The Makai training was never given when that element was supposed to be the major part of the Easton concept.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

- Menu Development for the Makai was repeatedly delayed and was presented very late in the scheduled opening plans for Easton. Final costings and yield analysis for the specific menu items were never presented.

158.    In justified reliance on the above representations of Defendants, Plaintiff was induced to enter into the above Franchise Agreement and Area Development Agreement and open a LemonShark Makai restaurant in Columbus, Ohio, and build out another one, paying Defendants' the above franchise fees, and expend significant other sums on equipment directed by Defendants, inventory, operating costs and other items, and take the other actions above far in excess of what was presented by the Franchisor. Had Plaintiff known of the falsity of Defendants' above representations, Plaintiff would not have entered into the Franchise Agreement and Area Development Agreement, expended the above sums, and taken the actions described herein.

159.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff is entitled to damages and to rescission of the Area Development and alleged other agreements, restitution and ancillary damages. Plaintiff has been damaged in a sum not yet fully ascertained which they are entitled to recover. Plaintiff will seek leave to amend the claims to set forth the amount when more fully known or at the time of the trial.

<u>THIRD CLAIM FOR RELIEF</u>
*VIOLATION OF CALIFORNIA FRANCHISE INVESTMENT LAW AGAINST ALL DEFENDANTS*

160.    Plaintiff restates and re-avers the allegations in the preceding paragraphs as though fully set forth herein and hereby incorporated by reference.

161.    Defendant LemonShark's offer of and entry into the above Franchise Agreement and Area Development to Plaintiff constituted the offer and sale of a franchise within the meaning of the California Franchise Investment Law California Corporations Code Section 31000, et. seq. (hereafter "CFIL"[1]).

---

[1] Section 31300 provides: *"[a]ny person who offers or sells a franchise in violation of Section 31101, 31110, 31119, 31200, or 31202, shall be liable to the franchisee ... who may sue for damages caused thereby, and if such violation is willful, the franchisee may also sue for rescission...."* Section 31110 provides it is unlawful *"to offer or sell any franchise in this state unless the offer of the franchise has been registered ... or exempted."* An offer or sale is made *"in"* California where *"an offer to sell is made in this state, or an offer to buy is accepted in this state."* Cal.Corp.Code § 31013.

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

162.   The Area Development Agreement and Franchise Agreement between Defendant Lemonshark and the Plaintiff are franchises as defined in the CFIL, California Corporations Code Section 31005. As alleged above, Plaintiff was granted the right to engage in the business of selling the trademarked LemonShark products. Plaintiff paid a franchise fee, including initial, ongoing royalty and marketing fees.

163.   Defendant LemonShark is, and at all relevant times was, required by the CFIL to register and timely provide every prospective franchisee with an accurate franchise disclosure document ("FDD"). Each FDD must provide **_all_** information in a clear and concise manner, disclosing the nature of the franchise in compliance with California Corporations Code Sections 31110 and 31111, and 10 California Code Regulations Section 310.111. The FDD has twenty-three categories of information or "Items" which require disclosure. The franchisor is specifically required to disclose the factual basis and material assumptions underlying any financial performance representations (claims relating to actual or potential levels of income, sales, or costs) made by the franchisor (Item 19). Defendant LemonShark and Demand violated the requirements of the CFIL, and applicable regulations governing the FDD, by misrepresentations and omissions set forth above in marketing and selling the Area Development Agreement and franchise agreement to Plaintiff.

164.   Defendants willfully made false and misleading misrepresentations to Plaintiff and intentionally and willfully omitted material information, including regarding operation and build-out cost representations on information and belief which were false. Defendants, and each of them, violated the CFIL by making misrepresentations and by omitting material facts in the offer and sale of the Area Development Agreement and franchise agreement to Plaintiff.

165.   The individual defendants referenced herein, were Lemonshark and Demand's officers and directors having had knowledge of facts that constituted California franchise violations are jointly and severally liable with corporate franchisor for violations of California Franchise Investment Law pursuant to Section 31302 of the California Corporations Code.

166.   As a direct result of Defendants willful violations of the CFIL, Plaintiff is entitled to damages according to proof, from Defendants or, in the alternative, to rescission of the Area

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

Development Agreement and other agreements, and restitution and ancillary damages. The sum of such damages is not yet fully known. Plaintiff will seek leave to amend the claims and set forth the amount when more fully known or at the time of the trial.

167.   The above statutory breaches by Defendants were intentional, fraudulent, and reprehensible conduct carried on with a willful and conscious disregard of the rights of Plaintiff and subjected Plaintiff to unjust hardship which inured to Plaintiff's benefit. Plaintiff is therefore entitled to have punitive or to exemplary damages assessed against Defendants in an appropriate amount according to proof.

## FOURTH CLAIM FOR RELIEF
### *RESCISSION AGAINST LEMONSHARK FRANCHISING, LLC.*

168.   Plaintiff restates and re-avers the allegations in the preceding paragraphs as though fully set forth herein and hereby incorporated by reference.

169.   Alternatively, Plaintiff is entitled to rescission of the Franchise Agreement (and Addendums) and the Area Development and to ancillary damages due to fraud, failure of consideration due to the fault of Defendant LemonShark, mutual or unilateral mistake of facts or other matters, or on other grounds including as set forth under California Civil Code section 1689, or as otherwise provided by law.

170.   In addition to rescission of contracts, Plaintiff is entitled to restitution and ancillary damages due to the above actions of Defendant Lemonshark and its agents.

## FIFTH CLAIM FOR RELIEF
### *BREACH OF CONTRACT AGAINST LEMONSHARK FRANCHISING, LLC.*

171.   Plaintiff restates and re-avers the allegations in the preceding paragraphs as though fully set forth herein and hereby incorporated by reference.

172.   On or About **February 3, 2020**, Plaintiff entered into a Franchise Agreement, Area Development Agreement, and related Addendum with Defendant Lemonshark.

173.   In addition to the express terms, the **February 3, 2020** agreements each contained a covenant of good faith and fair dealing, under which Defendant LemonShark was obligated to act in good faith and fair dealing in performance of its performance of its obligations and exercise

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

of its rights under the Agreements and not deprive Plaintiff of the fruits and benefits and reasonable expectations under the Area Development Agreement.

174.    Plaintiff has performed, or is excused from performing, all of the obligations owing under the above Area Development Agreement.

175.    Plaintiff has performed, or is excused from performing, all of the obligations owing under the above Franchise Agreement.

176.    Defendant LemonShark has materially breached the **February 3, 2020** agreements and the covenant of good faith and fair dealing as to Plaintiff by committing acts within the last three years and continuing thereafter, which include, but are not limited to, the following;

a.    Failure to establish a viable franchise system for opening and operating the LemonShark Makai restaurant;

b.    Failure to establish a viable franchise system for opening and operating the LemonShark Poké restaurant;

c.    Failure to mitigate the known risk to Plaintiff as to their investment in the Lemonshark Makai restaurant Concept after February 3, 2020;

d.    Failure to support Plaintiff in terms of reasonable marketing efforts for the Lemonshark Makai restaurant, including, but not limited to: failure to provide high quality pictures of the Franchisor directed dishes for Makai and Habachi; inadequate training procedures for bar and floor staff; inadequate menu design; and failure to communicate in a reasonable manner from December 1, 2021 to February 9, 2022; and

e.    Failure to develop a profitable franchise model as to the Makai concept.

177.    As a direct result of Defendant LemonShark's above breaches of contract, Plaintiff have been damaged and are entitled to damages according to proof from Defendant LemonShark. The sum of such damages is not yet fully known, and Plaintiff will seek leave to amend the claims and set forth the amount when more fully known or at the time of the trial.

SIXTH CLAIM FOR RELIEF

*UNFAIR TRADE PRACTICES AGAINST ALL DEFENDANTS.*

178.    Plaintiff restates and re-avers the allegations in the preceding paragraphs as though fully set forth herein and hereby incorporated by reference.

179.    Defendants' owed Plaintiff a duty to not engage in illegal, fraudulent or unfair trade practices prohibited under Section 17200 of the California Business & Professions Code.

180.    Defendants' actions constituted illegal trade practices in violation of Section 17200 of the California Business & Professions Code, including but not limited to violations of the CFIL, and violations of the Federal Trade Commission ("FTC") Act and the FTC Franchise Disclosure Rule (16 CFR Part 436). Said violations including offering and selling a franchise without required disclosures and fraud.

181.    The above actions of Defendants also constituted fraudulent trade practices in violation of Section 17200 of the California Business & Professions Code where the misrepresentations by Defendants had the capacity to deceive and did deceive Plaintiff and others, including because Defendants had superior and exclusive knowledge of their business and Plaintiff and members of the public had no means of learning of the falsity of those misrepresentations.

182.    The illegal, fraudulent and unfair business practices of Defendants present a clear and present danger to Plaintiff and to members of the public in that Defendants have a pattern and practice of unfair business practices of this nature which until continue unless a permanent injunction is issued against Defendants, and each of them. Such a permanent injunctive relief should include rescission of the Agreement and restitution to Plaintiff and corrective advertising as to the nature of their Franchise disclosures.

183.    As a direct result of the above illegal, fraudulent and unfair business practices in violation of Section 17200 of the California Business & Professions Code, Defendants have been unjustly enriched and have otherwise received revenues from Franchisees, including Plaintiff, consisting of the monies paid by Plaintiff including for franchisee fees, and product purchases,

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

which should be held in trust and returned to Franchisees by restitution, disgorgement or other equitable remedies.

184.    Plaintiff is entitled to attorney's fees due to the common fund doctrine and under the private attorney general doctrine including under Section 1021.5 of the California Code of Civil Procedure.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

### *For the First Claim for Relief for Fraud on Plaintiff against all Defendants:*

1.    Damages according to proof;

2.    Rescission; and

3.    Punitive Damages according to proof.

### *For the Second Claim for Relief, and in the Alternative, for Negligent Misrepresentation on Plaintiff against all Defendants:*

4.    Damages according to proof;

5.    Rescission; and

6.    Punitive Damages according to proof.

### *For the Third Claim for Relief for Violation of the California Franchise Investment Law on Plaintiff against all Defendants:*

7.    Damages according to proof;

8.    Rescission of all contracts; and

9.    Punitive Damages according to proof.

### *For the Fourth Claim for Relief for Rescission of the Agreements between Plaintiff and Defendant Lemonshark:*

10.    Rescission of all contracts;

11.    Restitution and Ancillary damages according to proof.

### *For the Fifth Claim, in the alternative to Fraudulent or Negligent Misrepresentation, for Breach of the Agreements between Plaintiff and Defendant Lemonshark:*

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

12.     Damages according to proof.

*For the Sixth Claim for Relief for Unfair Trade Practices by all Defendants:*

13.     Restitution and disgorgement of all sums provided to Defendants;

14.     Permanent Injunction and Advertising Correction;

15.     Costs and reasonable Attorney's fees under the common fund for violations of Section 17200 of the California Business & Professions Code.

16.     For such other and further relief as the Court in its discretion deems just and equitable.

Dated: May 9, 2022                              Respectfully submitted,

                                                DICKINSON WRIGHT

                                                By: */s/ Lael D. Andara*
                                                Lael D. Andara
                                                Manali Shah
                                                *Attorneys for Plaintiff*
                                                R2P One LLC

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

## INDEX OF EXHIBITS TO THE COMPLAINT:

| Ex. No. | Date | Description | Bates Number |
|---|---|---|---|
| 1 | 4/22/2019 | Franchise Disclosure Document *"6-18-19 Lemonshark –FDD FULL"* | R2P0000001-R2P0000263 |
| 2 | 10/30/2019 | Franchise Disclosure Document *"11-5-19 FDD FULL"* | R2P0000264-R2P0000529 |
| 3 | 5/8/2020 | Franchise Disclosure Document *"5-8-20 FDD FULL"* | R2P0000530-R2P0000794 |
| 4 | 2/3/2020 | LEMONSHARK FRANCHISING, LLC. - FRANCHISE AGREEMENT | R2P0000795-R2P0000899 |
| 5 | 2/3/2020 | Addendum No. 1 - *Franchise Agreement Addendum* | R2P0000889-R2P0000894 |
| 6 | 2/3/2020 | LEMONSHARK FRANCHISING, LLC. – AREA DEVELOPMENT AGREEMENT | R2P0000900-R2P0000993 |
| 7 | 12/28/2020 | Addendum No. 2 - *Franchise Agreement Second Addendum* | R2P0000940-R2P0000995 |
| 8 | 7/23/2020 | EASTON Lease – "Easton Urban District" | R2P0000996-R2P0001078 |
| 9 | 3/5/2021 | OSU Lease – "15+High" | R2P0001079-R2P0001158 |
| 10 | 10/5/2020 | Zoom Call with Plaintiff and Defendants Miller and Krieger | R2P0001159 |

## DEMAND FOR JURY TRIAL

R2P ONE LLC, and R2P TWO LLC or Range 2 Poké, demand a jury trial.

Dated: May 9, 2022

Respectfully submitted,

DICKINSON WRIGHT

By: */s/ Lael D. Andara*
Lael D. Andara
Manali Shah
*Attorneys for Plaintiff*
R2P One LLC

RANGE 2 POKE LLC'S COMPLAINT
CASE NO. 8:22-CV-00949

4867-5996-5470 v2 [90730-1]